MANUEL MERCADO v. THE STATE.

No. 8030.   Decided January 30, 1924.

**1.—Murder—Evidence—Cross-Examination—Imputing Crime to Witness.**

Where, upon trial of murder, in support of the State's theory that defendant was in possession of the pistol which belonged to the deceased it introduced a witness who was found in possession of a pistol, and testimony was introduced tending to identify it as having belonged to the deceased, and the witness accounted for his possession of the pistol that he had purchased it from another, not the deceased, etc., it was competent for the defendant on cross-examination of this witness to show the motive of the witness for claiming that he had received the pistol from said third party, and also to prove that the witness himself had committed the homicide, and the court's ruling in not permitting defendant to do so, is reversible error. Following Blocker v. State, 55 Texas Crim. Rep., 31.

**2.—Same—Evidence—Cross-Examination—Impeaching Witness.**

If, while testifying against the appellant upon his trial, the State's witness, Werbiski, had given negative answers to the questions propounded to him with reference to the possession of the pistol, a predicate for his impeachment would have been laid, and his admission that he had killed the deceased would have been a matter of such materiality to warrant impeachment, the State's evidence being circumstantial, and this, although the court made a ruling under a misapprehension of facts, for which defendant was not responsible and which was not shown to the jury.

**3.—Same—Evidence—Co-defendant's Conduct—Conspiracy—Tracks.**

Upon trial of murder there was no error in introducing testimony of conduct, the brother of defendant upon the occasion when he was required by the officers to put his foot into some of the tracks that were found; both defendant and his brothers having been indicted for the murder of the deceased, as principals, and there being evidence tending to show conspiracy.

**4.—Same—Conspiracy—Evidence—Acts of Co-defendants—Requested Charge.**

If, however, the jury failed to believe beyond a reasonable doubt that the conspiracy had been proved, then the acts of co-defendants which were introduced in evidence were not binding upon the defendant, and the court should have so instructed the jury as requested. Following Luttrell v. State, 31 Texas Crim. Rep., 493, and other cases.

**5.—Same—Interrogation of Witness—Action of Trial Judge.**

Where, upon trial of murder, defendant insisted that the nature of the questions propounded by the trial judge were calculated to create in the minds of the jury the impression that the judge trying the case was unfavorable to the case of the defendant, held that although it is not necessary to pass upon the question in the instant case, the propriety of interrogating witnesses by the court and the danger of impressing the jury that the judge entertains views of the merits of the case against either party, should ⌐⌐ be overlooked. Following Lagrone v. State, 84 Texas Crim. Rep., 409.

**6.—Same—Jury and Jury Law—Circumstantial Evidence—Conduct of Trial Judge.**

While it is not necessary in the instant case to pass on the question, as the same will be reversed upon other grounds, the action of the trial judge in qualifying the members of the venire and in endeavoring to inform the jury what was meant by circumstantial evidence, in giving them an illustration by detailing them the facts and results of a certain case which had occurred within the knowledge of the court, instead of a hypothetical case is of questionable propriety.

Appeal from the District Court of Cameron. Tried below before the Honorable J. C. George, Special Judge.

Appeal from a conviction of murder; penalty, life imprisonment in the penitentiary.

The opinion states the case.

*Wells & Galbraith,* for appellant.—On question of examining witnesses by trial judge: Harris v. State, 36 S. W. Rep., 88; Hopperwood v. State, 44 id., 841; Strong v. State, 156 id., 664; Kirk v. State, 32 id., 1045.

Upon question of not limiting declarations of co-defendant: Smith v. State, 81 S. W. Rep., 936; Parr v. State, 38 id., 180; Loggins v. State, 8 Texas Crim. App., 442.

On question of imputing crime to another. La Fell v. State, 153 S. W. Rep., 884; Jackson v. State, 20 Tex. Crim. App., 192; Wood v. State, 28 id., 16.

On question of refusing requested charges on accomplice and principals: McKnight v. State, 156 S. W. Rep., 1188; Jenkins v. State, 155 id., 208; Martin v. State, 122 id., 558; Walker v. State, 140 id., 455; Jones v. State, 15 Texas, 168; O'Connell v. State, 18 id., 363; Burrill v. State, 18 id., 713.

Upon question of testimony concerning movements of co-defendants without qualification in charge of court: Dobbs v. State, 113

S. W. Rep., 923; Bass v. State, 127 id., 1023; Wilson v. State, 155 id., 242, and cases cited in the opinion.

Upon question of trial judge propounding questions to the witnesses: Mitchell v. State, 144 S. W. Rep., 1006; Drake v. State, 143 id., 1157; Newton v. State, 143 id., 638; Ferrell v. State, 152 id., 901.

On question of court's lecture to the jury: Jones v. State, 51 S. W. Rep., 949; Attaway v. State, 55 id., 45.

*Tom Garrard* and *Grover C. Morris,* Assistants Attorney General, for the State.

MORROW, Presiding Judge.—Appellant is condemned to confinement in the penitentiary for life for the murder of Guillermo Sayas.

The deceased, in a Ford car belonging to his sister, left her home in Brownsville about three o'clock on Monday afternoon, expressing his intention to go to the appellant and obtain a pistol which he had previously delivered to him. Appellant, on the same afternoon, was at work on a Dodge car belonging to one Tomayo. The deceased came in the Ford car to Tomayo's place of business, saw the appellant and had an interview with him. Afterwards on the same day, they were seen together in a Ford car in the city of Brownsville. Later in the same day, the deceased, riding in the Ford automobile belonging to his sister, was seen upon the public highway several miles east of Brownsville traveling away from the city. Two other persons were in the car but were not recognized by the witness. The deceased spoke to the witness who was well acquainted with the appellant and his two brothers, Jose and Higinio. The car was traveling in the direction of Higinio's home, which was about twelve miles east of Brownsville, and about two miles from a point in the Rio Grande River where two or three days later the body of the deceased was found. Appellant's brother, Jose, was seen about midnight of October 30th at a point on the public road about eight miles from Brownsville, traveling in the direction of San Benito, which we understand is fifteen miles or more west of Brownsville. On the following Wednesday the body of the deceased was found in the Rio Grande River, a short distance from a certain bayou known as "bayuke San Ignacio." Late in the night of October 30th there was seen standing, near the road and near the bayou, mentioned, a Ford automobile. The lights were not burning and no one was seen in or about it. The Ford automobile which had been in possession of the deceased was found on Wednesday near the public road, about thirty miles west of the bayou, in the direction of the town of San Benito. The windshield was shattered and the cushion bore evidence of having been washed, and traces of blood were upon it. Succeeding the disappearance of the deceased on Monday, there was found near the bayou mentioned a piece of

glass which fitted into the windshield of the Ford car mentioned. Tracks of an automobile near the road leading across the bayou were also observed and near them were seen tracks of men wearing shoes or boots and one whose feet were bare in socks. Boots were worn by Higinio Mercado and shoes were worn by the appellant. At the time of the discovery of the body of the deceased, the feet were bare. Upon the body were five gun-shot wounds and a .38 calibre bullet was found in one of the wounds. The body had been disemboweled and the contents of the abdomen were not found. Between the time of the disappearance of the deceased and the time that his body was discovered a rain had fallen, and the ground from the bayou to the river was muddy. The tracks mentioned were examined. The appellant and his brother were taken to the locality and caused to walk on the soil. The tracks made by them coincided in size, shape and peculiarities with those of the appellant and his brother Higinio. When the latter was caused to put his foot in one of the tracks, "he tried to press on it some so as to make it deeper, and one of the officers in charge objected and told him to make it just like he was walking, without putting any weight on it, and the result was just perfect." There was a peculiarity in the heel of the appellant's shoe which corresponded with the impressions in one of the tracks upon the ground. On the afternoon of October 30th, Jose Mercado in his Dodge automobile, accompanied by the appellant, was seen going in the direction of Higinio's home, which was near the bayou mentioned. About dusk on the same day the appellant was seen near Higinio's home.

After his arrest and while on his way to jail in an automobile with two officers, the appellant jumped out of the car and ran a short distance. He was recaptured within a few moments and lodged in jail. Some days later a witness bought a pistol which was of the same size and calibre as the pistol belonging to the deceased. According to the witness who bought the pistol, the person who sold it to him claimed to have found it in the alley through which the appellant had traveled on the occasion of his escape from the car. There was some testimony to the effect that cartridges were also found in the alley through which the appellant had passed.

The foregoing is a synopsis of the State's testimony. Much of it is sharply controverted by testimony introduced by the appellant. The person from whom the State's witness claimed to have received the pistol denied that he had found or sold it. Appellant also denied that he had thrown it or cartridges upon the street or alley. He testified that the reason he jumped out of the car was to avoid an attack from one of the officers with whom he was riding.

An engineer who made the map introduced in evidence explained that data upon which it was made and his method of making it. He gave testimony touching the topography and the character of the vicinity of the bayou mentioned. Much testimony was given attempt-

ing to account for the tracks relied upon by the State by the character of the place; also that there was brush and objects which might have been used to avoid making the tracks and that if made on the day of the disappearance of the deceased, they would have been obliterated by reason of the muddy condition of the ground. The place was public and near a frequented road.

The evidence that appellant was the person who was seen in the Ford car at a filling station in the city of Brownsville in company with the deceased was controverted not only by the denial of the appellant but by other testimony to the effect that when the deceased was seen, another person and not the appellant, was with him. The presence of Jose and Higinio at the ranch later in the day of the homicide was explained by Jose Mercado, who denied the presence of the appellant at the ranch. Jose Mercado stated that it was his custom to visit his brother Higinio and take him supplies in the car which he (Jose) used as a jitney.

Witnesses in addition to the appellant, who testified in his own behalf, supported the theory of alibi. Appellant disclaimed any enmity towards the deceased and explained his possession of the pistol of the deceased before the homicide with the statement that the deceased was engaged in smuggling goods across the Rio Grande River, and desiring to take the pistol across into Mexico and being afraid to take it himself, he requested the appellant to do so. Appellant decided that he was also afraid to do so and the deceased on the day of the homicide obtained the pistol and said that he would take it over in person in the car.

The peculiarity described by the State's witnesses in the shoes worn by the appellant was denied by him. The shoes which he wore at the time the tracks were examined were not produced. He claimed that he had loaned them to a soldier who was barefooted and who was with him in jail, and that the soldier took them away with him.

Numerous bills of exception are found in the record. All of them have been examined, but space forbids a discussion of those which are deemed to present no question of importance or difficulty, and relate of a matter not likely to arise upon another trial.

In support of its theory that the appellant was in possession of the pistol which belonged to the deceased, the State introduced the witness James Werbiski, a citizen of Matamoras, Mexico. He was found in possession of a pistol which was introduced in evidence, and evidence was introduced tending to identify it as having belonged to the deceased. Werbiski accounted for his possession of the pistol upon the statement that he had purchased it from Pedro Saldano, a citizen of Brownsville, it being the theory of the State that when the appellant left the automobile in which the officers were conducting him to jail he was in possession of the pistol of the deceased; that he had not been searched and that he threw the pistol in an

alley near which Saldano resided and that Saldano found the pistol and sold it to Werbiski. Saldano testified and denied that he had found and sold the pistol or that he had any knowledge of it. The cross-examination of Werbiski suggests that his possession of the pistol had in some way come to the notice of the officers at Matamoras and that he explained his possession of it by the claim that he had purchased it from Saldano. According to his testimony, the transaction between him and Saldano was conducted with much secrecy.

During the cross-examination of the witness Werbiski the acquaintance of the witness with one Geronimo de la Cruz and one Primopara was brought in evidence. There was testimony that the deceased had killed a near relative of Geronimo de la Cruz. The witness Werbiski was asked if he remembered sending a note by Primopara to Geronimo de la Cruz stating that he (witness) had killed Guillermo Sayas and requesting $150 as compensation therefor. The State's objection against it was sustained. Appellant's counsel then asked the witness a question in different words but the same in substance when the court interposed and told counsel that the inquiry must not be repeated as the court had ruled against it. Counsel for appellant then asked if it was not a fact that Geronimo de la Cruz had paid the witness $150 on the claim that the witness had killed Guillermo Sayas. The court again interposed and prevented the answer. Counsel then asked the witness if he had not undertaken to collect money from people in Matamoras on the claim that he had killed Guillerimo Sayas. State's counsel objected and the court in sustaining the objection, admonished counsel that he must not pursue the inquiry further, stating that it was the fourth time he had asked practically the same question. In qualifying the bill the court explains that he was not familiar with the Spanish pronunciation and did not comprehend that the inquiry related to the claim that he (witness) had received or demanded money for killing the deceased but that it referred to some other person. On hearing the motion for new trial, the court had the witness interrogated and ascertained from him that he would have denied killing Sayas and also denied making the demand for compensation and the sending of the note mentioned in the inquiry. It is apparent from the explanation of the bill that in the opinion of the learned trial judge his misapprehension of the inquiries mentioned led him into error in refusing to permit the inquiry. A new trial would have been granted if the witness had admitted that he would have given an affirmative answer to any of the questions. This court concurs in the view that appellant should have been allowed to make the inquiry of the witness. It is of the opinion, however, that the error was not cured by the procedure followed. The witness having been discovered by the officers in possession of a pistol identified as that of the deceased was called upon to explain. The

explanation given by him was used by the State to connect the appellant with the possession of the pistol. This was of great importance to the State and much to the disadvantage of the appellant. It was his theory and testimony that he did not have the pistol of the deceased at the time of the homicide or thereafter; that he did not throw it into the alley at the time he jumped out of the car or at any other time. The latter statement was corroborated by the person from whom Werbiski claimed to have received the pistol. It was competent for the appellant on cross-examination to show the motive of Werbiski for claiming that he had received the pistol from Saldana, and also to prove that Werbiski had committed the homicide. The questions propounded were directed to this end. If while testifying against the appellant upon his trial Werbiski had given negative answers to the questions propounded, a predicate for his impeachment would have been laid and his admission that he had killed the deceased would have been a matter of such materiality as to warrant impeachment, the State's evidence being circumstantial. See Blocker v. State, 55 Texas Crim. Rep., 31. Even, however, if there was no impeaching testimony available to the appellant, the action of the court under discussion was a limitation upon his right beyond the discretion of the trial court. That the court made a ruling under a misapprehension of fact for which the appellant was in no sense responsible was not known to the jury and the injury to the accused was not thereby prevented. If the witness had sworn falsely touching the inquiry upon the trial of the appellant, he would have been under the penalties of perjury. Whether such would have been the case on the hearing of the motion for new trial is at least questionable.

It was shown by the State upon the trial of the appellant that his brothers, Jose and Higinio, were each indicted for the murder of the deceased, and that Higinio had been tried. The court instructed the jury upon the law of principal offenders. Circumstances were relied on to connect the appellant and his brothers, particularly Higinio, with the commission of the present offense. Evidence of various acts of Jose and Higinio were introduced in evidence against the appellant. The movements of Jose on the day and night upon which the deceased was missing were proved; also those of Higinio. There was evidence that part of the tracks which, according to the theory of the State, were found near the scene of the homicide were made by Higinio, and after the arrest of the appellant and Higinio, they were taken by the sheriff and others to the point where the tracks in question were found and there Higinio was required by the officers to make tracks and to put his foot into some of the tracks that were found. Evidence of his conduct upon that occasion was introduced upon behalf of the State. Objections to the introduction of evidence concerning the acts of Higinio and Jose were properly overruled by the court. These were circumstances tending to show a conspiracy,

and if a conspiracy was proved beyond a reasonable doubt, the acts of the brothers of the appellant were available to the State as evidence against him. If, however, the jury failed to believe beyond a reasonable doubt that the conspiracy had been proved, then the acts of Jose and Higinio which were introduced in evidence were not binding upon the appellant. Although the jury might have believed that Higinio was instrumental in bringing about the death of the deceased, his guilt would have legally affected the appellant only in the event they acted together, or had formed a conspiracy to kill the deceased and that the conspiracy was carried into effect while the appellant was present. The several special charges prepared by the appellant were appropriate to inform the jury of this principle of law. The law, in the judgment of this court, entitled the appellant to have the principle stated embraced in the charge either by amendment to the main charge or by reading to the jury one of the special charges requested by the appellant. Luttrell v. State, 31 Texas Crim. Rep., 493, 21 S. W. Rep., 248; Graham v. State, 61 S. W. Rep., 714; Wallace v. State, 46 Texas Crim. Rep., 341; Chapman v. State, 45 Texas Crim. Rep., 479; Dobbs v. State, 57 Texas Crim. Rep., 113, 100 S. W. Rep., 948; Wilson v. State, 70 Texas Crim. Rep., 3, 155 S. W. Rep., 243. Many other cases illustrate this principle.

Numerous complaints are lodged against the action of the learned trial judge on account of his interrogation of the witnesses. Appellant insists that the nature of the questions propounded were calculated to create in the minds of the jury the impression that the judge trying the case was unfavorable to the case of the appellant.

"On the trial of an action the court may ask questions which the attorneys had the right to propound, and failed to ask, but the court should not usurp the functions of counsel by prescribing the order of calling witnesses or interfering with the general conduct of the case by the attorneys, or by examining witnesses to the exclusion of counsel." (Ruling Case Law, Vol. 26, p. 1025.)

The propriety of interrogating in a given case and the danger of impressing the jury with the idea that in the mind of the court there is question touching the veracity of the witness or that the judge entertains views of the merits of the case against either party should not be overlooked. The jury seizes with alacrity any intimation from the judge and naturally and justly attaches great weight to his opinion. Simmons v. State, 55 Texas Crim. Rep., 441; Lagrone v. State, 84 Texas Crim. Rep., 609.

An analysis of the numerous questions propounded to witnesses in the present case is not deemed expedient inasmuch as the judgment is to be reversed upon other grounds, and the same matters are not likly to arise upon another trial.

In qualifying the members of the venire and in endeavoring to inform the jury what was meant by circumstantial evidence, the

court gave them an illustration by detailing to them the facts and result of a certain case which had occurred within his knowledge upon the trial of which the evidence was wholly circumstantial and as a result of which two persons were condemned to death and executed. Complaint is made of this in several bills of exception in which it is made to appear that the recital took place in the presence of practically all of the veniremen including ten who were later empaneled on the jury. The specific complaint is made that the illustration selected was a homicide case bearing marks of similarity with the case of the appellant. As intimated above, the case will be reversed upon other grounds, but in passing, the suggestion is made that in making such an illustration, perhaps not an actual but an hypothetical one should be chosen. That as a result of the actual trial the accused was convicted and executed to say the least, would be of questionable propriety, and might in a given case result in injury. The case selected by the court was one much stronger than the present. It did, however, have in it some points of similarity. For example, there was evidence that before the homicide the deceased and the accused were together. Reliance was had in part upon the similarity of footprints found upon the scene of the homicide with those of the accused. Evidence touching horse tracks were also introduced.

Because of the errors pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*