Affirmed and Opinion filed March 13, 2007








Affirmed and Opinion filed March 13, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00127-CR

____________

 

JACOURRIE DEWAYNE FINLEY, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 248th
District Court

Harris County, Texas

Trial Court Cause No. 1028187

 



 

O P I N I O N








Appellant, Jacourrie DeWayne Finley, appeals from his
conviction for third degree felony theft.  A jury found him guilty, and the
trial court sentenced him to sixteen years in prison.  In six issues, appellant
contends that (1) the trial court erred in failing to have appellant sign a
written waiver of his right to counsel; (2) the trial court erred in failing to
adequately admonish appellant of the dangers and disadvantages of
self-representation; (3) the trial court erred in refusing to provide counsel
when appellant attempted to waive his right to self-representation; (4)
appellant=s motion to recuse the trial judge should have been
granted because the judge was partial, biased, and prejudiced against him; (5)
a witness testified that appellant was on probation, thus impeaching appellant
before he testified; and (6) the trial judge made inflammatory and harmful
comments to appellant in front of the jury.  We affirm.

Background

Appellant was charged with Aidentity theft@ from several
complainants in the aggregate amount of greater than $20,000 but less than
$100,000.  Prior to trial, appellant waived his right to counsel and asserted
his right to self-representation.  The trial court held a hearing on the matter
and granted appellant=s requests.  Subsequently, at the
beginning of jury voir dire, appellant stated that he no longer wished to
represent himself and instead wanted counsel to represent him.  The trial court
denied this request, and trial proceeded with appellant representing himself.

One morning during trial, appellant told the judge that he
was having trouble seeing out of one of his eyes.  The judge permitted
appellant to move so that he might be able to see the witnesses better.  Later,
appellant again complained that he was having trouble seeing.  The judge
initially refused to halt the proceedings and again told appellant that he
could move in order to see the witnesses better.  At lunchtime, however, the
court recessed the trial for the remainder of the day so that appellant could
receive medical attention.  Appellant subsequently filed a motion to recuse the
judge, alleging that the judge was partial, biased, and prejudiced against him
because she did not permit him prompt medical attention regarding his eye.  The
motion was heard and denied by a different appointed judge.

Also during trial, while appellant was cross-examining his
former landlord, the witness gave a long, unresponsive answer that included a
suggestion that appellant had been on parole at one time.  After the conclusion
of the witness=s testimony (and after the jury was excused for the
day), appellant requested that the judge instruct the jury to disregard.  The
next morning, the judge instructed the jury to disregard the witness=s answer.








Additionally, at one point during appellant=s
cross-examination of a witness, the trial judge called the parties to the bench
and admonished appellant for asking questions that called for hearsay.  When
appellant returned to counsel table and asked his next question, the judge
stated: AThat=s the type of
question that=s improper and we=re not going to
spend all day doing that.  I just advised you of that.  Improper hearsay
information.@  Appellant did not object to the judge=s comments.  The
jury found appellant guilty as charged, and after finding allegations in an
enhancement paragraph to be true, the trial court sentenced him to sixteen
years in prison.

Written Waiver








In his first issue, appellant contends that the trial court
erred in failing to have him sign a written waiver of his right to counsel. 
Specifically, appellant contends that article 1.051(g) of the Texas Code of
Criminal Procedure requires that a defendant=s waiver of the
right to counsel must be in writing.  Tex.
Code Crim. Proc. Ann. art. 1.051(g) (Vernon 2005).[1] 
The Court of Criminal Appeals has expressly held otherwise.  See Burgess v.
State, 816 S.W.2d 424, 429-31 (Tex. Crim. App. 1991) (A[W]e hold that
when an accused affirmatively asserts his right to self‑representation .
. . , a written waiver of the right to counsel is not required under [article
1.051].@); see also 42
George E. Dix & Robert O. Dawson, Texas Practice: Criminal Practice and
Procedure, ' 24.26 (2d ed. 2001) (discussing Burgess). 
Appellant here waived counsel in conjunction with an affirmative assertion of
his right to self-representation.  Accordingly, under Burgess, we
overrule appellant=s first issue.

Admonishments

In his second issue, appellant contends that the trial
court erred in failing to provide adequate admonishments on the dangers and
disadvantages of self-representation.  Before a defendant invokes the right to
self‑representation, he or she should be made aware of the dangers and
disadvantages of self‑representation such that the record establishes a
choice Amade with his eyes
open.@  Faretta v.
California, 422 U.S. 806, 835 (1975).  Faretta does not mandate a
formulaic inquiry concerning a defendant=s age, education,
background, or previous mental health history.  Blankenship v. State,
673 S.W.2d 578, 583 (Tex. Crim. App. 1984).  The trial court must make,
however, proper admonishments concerning pro se representation and sufficient
inquiries to assess whether the defendant is making a knowing exercise of the
right to defend himself.  Id.  Viewed from the appellate standpoint, the
record must reflect that the defendant was made aware of the dangers and
disadvantages of self‑representation and, thus, that he intelligently and
understandingly rejected the assistance of counsel.  Goffney v. State,
843 S.W.2d 583, 584-85 (Tex. Crim. App. 1992).

In his brief, appellant states that

[t]he trial court only asked the
Appellant whether he had any formal legal training (which Appellant had not),
whether he had any experience in self representation in any criminal cases
(which Appellant had only once), why Appellant did not want an appointed
lawyer, and if Appellant felt he had Asufficient
knowledge@ to represent himself, and then announced that he
[sic] would allow Appellant to go forward and represent himself.








This is an incomplete representation of the trial court=s inquiry and
admonishments.  After appellant indicated a desire to represent himself, the
court queried appellant and admonished him at some length.  The judge began by
telling appellant that she did not think it was smart for a defendant to
represent him or herself.  She inquired of appellant exactly why he wanted to
represent himself.  She explained at length that while sometimes defendants don=t like hearing
what appointed counsel has to say, counsel may just be truthfully analyzing the
strength of the case against the defendant.  She also informed appellant that
in her experience, defendants who are represented by counsel have a better
chance of being found not guilty or of getting a lesser sentence than
defendants who represent themselves.

The judge asked appellant his age (35), his level of
education (graduated from New York University with a business degree), his
prior employment (included seven years with Citibank), whether he had ever been
treated for mental illness (no), whether he had ever represented himself (yes,
in a month-and-a-half-long federal fraud trial), and whether he had
participated in any other trials with counsel (yes, a two-and-a-half-week-long
state fraud trial in which the jury found him not guilty).  She also asked him
whether he had learned anything about the Federal Rules of Evidence and whether
he understood that there were differences between the Federal Rules and Texas
Rules; he answered Ayes@ to both
questions.  She asked him whether he was familiar with the level and punishment
ranges of the charged offenses, and he indicated that he was.  He also showed a
knowledge regarding possible enhancement of the punishment range.








She told him several times that he would receive no favors
from the court by choosing self-representation and that the prosecution might
attempt to exploit his lack of knowledge.  She further grilled him at length
regarding various nuances of the evidentiary rules.  She told him that he could
conceivably be found guilty simply because he did not know how to ask a
question properly or because he did not know the correct objection to make. 
She told him that he would not be able to complain on appeal that he had
received ineffective representation.  Lastly, she asked him if he was familiar
with various rules, procedures, and strategies relating to picking a jury.  At
the conclusion of this exchange, appellant asserted his right to
self-representation.

Appellant does not suggest any additional questions that
the judge should have asked or any additional information the judge should have
imparted.  On this record, we find that the judge thoroughly questioned and
admonished appellant regarding his knowledge and experience and the pitfalls of
self-representation.  Accordingly, we overrule appellant=s second issue.

Waiver of Self-Representation

In his third issue, appellant contends that the trial court
erred in refusing to provide him with counsel when he attempted to revoke his
waiver of counsel at the beginning of voir dire.  Appellant waived counsel and
asserted his right to self-representation on July 26, 2005.  On January 30,
2006, a venire panel was seated, and the judge began talking to them.  At that
point, appellant expressed confusion regarding who would determine punishment
if he was found guilty.  Ultimately, during a bench conference, appellant asked
the judge to Akick [him] out of court@ and stated AI give up my right
to represent myself.  I can=t do this.@  The judge told
appellant that she was not going to do that, instructed him to take a seat, and
continued with voir dire.  Appellant contends that in refusing to grant his
request to withdraw his waiver of the right to counsel, the trial judge
violated his United States and Texas constitutional rights to counsel.  U.S. Const. amend. VI; Tex. Const. art. I, ' 10.








In Medley v. State, 47 S.W.3d 17 (Tex. App.CAmarillo 2000,
pet. ref=d), cert.
denied, 126 S. Ct. 621 (2005), the Amarillo Court of appeals dealt with a
similar request made on the day that trial was to begin.  In analyzing the
issue, the court looked to the Court of Criminal Appeals= opinion in Marquez
v. State, 921 S.W.2d 217 (Tex. Crim. App. 1996) (plurality op.).  Although Marquez
specifically involved a last-minute assertion of a defendant=s right to a jury
trial, the Medley court found its analysis applicable to last minute
assertions of the right to counsel.  Medley, 47 S.W.3d at 24.  We
agree.  In Marquez, the Court first noted that even for constitutional
claims, the party seeking to change the status quo bears the burden of showing
facts entitling him to relief.  921 S.W.2d at 222.  Consequently, a criminal
defendant who has waived a right but then seeks to reclaim that right must show
that he or she revoked the waiver sufficiently in advance of trial so that it
would not (1) interfere with the orderly administration of court business, (2)
result in unnecessary delay or inconvenience to witnesses, or (3) prejudice the
State.  Id. at 223; Medley 47 S.W.2d at 24.  Any showing by the
defendant may be rebutted by the State, the trial court, or the record
itself.   Marquez, 921 S.W.2d at 223; Medley, 47 S.W.3d at 24. 
The trial court=s ruling on the reclamation of a waived
right is reviewed under an abuse of discretion standard.  Marquez, 921
S.W.2d at 223.

The record in Medley demonstrated that (1) the
defendant had not caused or sought any delays in the proceedings prior to his
waiver of his right to self-representation; in fact, the defendant had
indicated a desire to speed the process along[2];
(2) the defendant=s standby counsel had been his trial
counsel prior to the defendant=s waiver of his right to counsel and had
been actively involved in the case throughout; and (3) the defendant did not
request any postponement related to his request to reclaim his right to
counsel, and there was no indication standby counsel was unwilling or
unprepared to try the case immediately.  Medley, 47 S.W.3d at 24-25. 
Based on these facts, the court reversed the conviction and ordered a new
trial.  Id. at 25-26.








Here, the record demonstrates that appellant requested
removal of his original standby counsel (and former trial counsel) on November
8, 2005.  Appellant then did not request new standby counsel, and new standby
counsel was not appointed, until the start of trial on January 30, 2006.  Thus,
it is very unlikely that standby counsel would have been willing or prepared to
try the case immediately.  See id. at 25; see also United States v.
Taylor, 933 F.2d 307, 311 (5th Cir. 1991) (holding that trial court erred
in refusing defendant=s request for counsel during sentencing
phase where standby counsel was present and had participated in guilt/innocence
phase).  The evidence regarding earlier delays is not very revealing.  The
record shows that in a letter to the judge, appellant requested more time to
prepare for trial, but he objected in a separate letter to the fact that trial
had been rescheduled.  Although the case was reset numerous times, there is
little explanation in the record.  At the beginning of voir dire, when
appellant indicated his desire for counsel, the judge explained to him that the
case had been set for trial for seven months and that she had told him the week
before that they were going to pick a jury and proceed to trial on that date. 
Although appellant did not explicitly request a continuance on the day of
trial, he did ask the judge to Akick [him] out of court@ and providing
counsel at that point certainly would have resulted in a delay in order for new
counsel to become acquainted with the case.  Accordingly, this case is
distinguishable from the facts in Medley.

In short, unlike the defendant in Medley, appellant
here did not overcome his burden of showing that his reassertion of the right
to counsel would not have (1) interfered with the orderly administration of the
court=s business, (2)
resulted in unnecessary delay or inconvenience to witnesses, or (3) prejudiced
the State.  Therefore, we cannot say that the trial court abused its discretion
in refusing to grant appellant=s request for counsel.  We overrule
appellant=s third issue.

Motion to Recuse

In his fourth issue, appellant contends that his motion to
recuse the trial judge should have been granted because the judge was partial,
biased, and prejudiced against him.  Specifically, appellant asserts that the
trial judge refused to allow him medical treatment for a Asevere left eye
infection@ impacting his ability to observe witnesses during
trial.








The record reflects that during trial, before the first
witness took the stand on February 1, 2006, appellant asked if he could
approach the bench.  When permitted to do so, appellant told the judge that he
could not see out of his left eye.  He said that he thought it was caused by
pollen but was not sure.  The judge suggested that appellant use some water and
a tissue on the eye and sit closer to the witnesses in order to see them
better.  Appellant agreed.  When the prosecutor passed the witness, after the
equivalent of 36 record pages of testimony, appellant again asked to approach
the bench.  Appellant then told the judge that his eye problem was getting
worse and that he could not see the witness out of his left eye.  Appellant
stated Aso that the record
is clear, my eye is obviously continuing to water and it=s red.@  He requested
that the judge Alet [him] get something for it.@  The judge told
appellant that he could move to where he could see the witness better but that
they were not going to take a break at that point.  She said that maybe he
could get some drops for it during the lunch break.  She also said A[f]or purposes of
the record, it looks like you have allergies.@

Appellant cross-examined the witness for the equivalent of
eleven record pages before the proceedings recessed for lunch.  After lunch,
the judge dismissed the jury for the remainder of the day so that appellant
could seek medical attention.  When trial began again the next day, nothing was
said on the record about appellant=s eye condition,
and appellant continued his cross-examination of the witness.

That same day, a hearing was held before a different
presiding judge on appellant=s motion to recuse the trial judge. 
During this hearing, the court reporter and prosecutor testified to events in
similar detail to those described above.  Stand-by counsel for appellant,
however, testified that appellant may have requested medical attention as early
as the first bench conference and that the judge refused to stop the
proceedings so he could be taken to the jail for treatment.  During
cross-examination by the prosecutor, counsel acknowledged that prior to the day
on which appellant had the eye problem, he had been wearing glasses, but on
that day he was wearing contact lenses.  He also remembered appellant=s saying at one
point that his problem might be related to the contact lenses.








Appellant also testified, stating that he had difficulty
with his eye from the time he woke up that morning, before he put in his
contact lenses.  He said that it may have been due to a pollen allergy.  He
said that the eye began to hurt and at some point he realized that he could not
see out of the eye at all.  Once in court, he informed the judge and requested
that she allow him to return to the jail to seek medical attention, but she
refused.  He said that it might have interfered with the way he questioned the
witness, but he could not be sure.  He was taken to see a doctor by the
bailiff, and the doctor initially diagnosed him with acute vision loss in his
left eye.  According to appellant, the trial judge then called the doctor and
told the doctor that appellant had been trying to delay the proceedings.  He
testified that he was subsequently taken to an emergency room and then released
without a diagnosis.  He said that at the time of the hearing, he was still
having problems with the eye but could now see out of it.

In both criminal and civil cases, motions to recuse the
trial judge are governed by rules 18a and 18b of the Texas Rules of Civil
Procedure.  Tex. R. Civ. P. 18a,
18b; see also Wesbrook v. State, 29 S.W.3d 103, 120 (Tex. Crim. App.
2000).  We review the denial of a motion to recuse under an abuse of discretion
standard.  Tex. R. Civ. P. 18a(f). 
Thus, we will not reverse a ruling on the motion if it is within the zone of
reasonable disagreement.  Wesbrook, 29 S.W.3d at 120-21.  The impartiality
of a trial judge is presumed, and the defendant has the burden of rebutting
this presumption.  Id. at 121.  The grounds upon which recusal may be
based include, among others:  (1) when the judge=s impartiality
might reasonably be questioned, and (2) when the judge has a personal bias or
prejudice concerning the subject matter of the case or a party.  Tex. R. Civ. P. 18b(2)(a), (b).








Generally, to merit recusal, partiality or bias must stem
from an extrajudicial source and affect the judge=s opinion on the
merits of the case.  See Roman v. State, 145 S.W.3d 316, 321
(Tex. App.CHouston [14th Dist.] 2004, pet. ref=d) (citing United
States v. Grinnell Corp., 384 U.S. 563, 583 (1966), and Kemp v. State,
846 S.W.2d 289, 305‑06 (Tex. Crim. App. 1992)).  Absent proof of an extra‑judicial
source, the only proper basis for recusal on grounds of partiality or bias is
an indication of a high degree of favoritism or antagonism.  Id. at
322.  Furthermore, partiality or bias may only be a ground for recusal when it
is of such a nature and extent as to deny the movant due process of law.  See
Kemp, 846 S.W.2d at 305.  The test is whether a reasonable person, knowing
all of the circumstances involved, would have a reasonable doubt as to the
impartiality of the trial judge.  Id.; Burkett v. State, 196
S.W.3d 892, 896 (Tex. App.CTexarkana 2006, no pet.).

Here, the record demonstrates that when appellant first
approached the bench regarding his eye condition, the judge attempted to help
appellant by providing water and a tissue and by allowing him to move closer.[3] 
When appellant approached the second time, the trial judge refused to halt the
proceedings to allow him to seek medical attention.  Appellant then
cross-examined a witness for the equivalent of eleven record pages before the
judge recessed for lunch and permitted appellant to seek medical attention. The
judge subsequently recessed the trial until the next morning, at which time
appellant appeared and made no mention of his eye condition on the record. 
Appellant does not cite to any evidence demonstrating that any actions by the
judge stemmed from an extra-judicial source.  The judge stated on the record
that appellant=s eye condition appeared to result from allergies. 
Appellant testified at the recusal hearing that he could not see out of his
left eye on the day in question.  However, as fact-finder, the judge presiding
over the recusal hearing was not required to accept as true appellant=s own testimony
regarding the severity of the eye condition.  See Dishner v. Huitt‑Zollars,
Inc., 162 S.W.3d 370, 375 (Tex. App.CDallas 2005, no
pet.).








Apart from appellant=s assertions,
there is no evidence in the record that he was unable to see out of his eye or
that the condition affected his ability to view the witnesses.  Given the lack
of evidence concerning the nature of appellant=s eye condition
and the fact that the trial judge only required appellant to examine a witness
for a relatively brief period of time before allowing him to seek medical
attention and recessing trial for the day,  we find that appellant failed to
demonstrate that any bias, prejudice, or partiality on the part of the trial
judge stemmed from an extrajudicial source, demonstrated a high degree of
favoritism or antagonism, or was of such a nature and extent as to deny the
movant due process of law.  Accordingly, we cannot say that the judge ruling on
the motion to recuse abused her discretion in denying the motion.  We overrule
appellant=s fourth issue.

Impeachment Evidence

In his fifth issue, appellant complains that a prosecution
witness testified during cross-examination that appellant was on probation.  He
asserts that the nonresponsive testimony  impeached him by attacking his
character before he even testified.  See generally Tex. R. Evid. 404(a) (governing general
use of character evidence), 404(b) (governing evidence of other crimes), 609(a)
(governing impeachment by evidence of prior conviction).  The testimony in question
occurred while appellant was cross-examining his former landlord about whether
the landlord possessed a key to appellant=s mailbox.

A       No, I did not have the key.

 

Q       Do you recall telling me to leave your check
in the mail and you would pick it up?

 

A       My check?  I didCI had a check from my previous work
that went there, but prior to you living there or you moving there, my friend
was living there, so I would just get my check from there.

I did call you because I went to check for my
statements that came out and for my >04 taxes, okay, >04 statements.  And last check that I received and that was
missing and I called you because I found out when I went into the apartment
that you were on probationC

 

THE COURT:          Excuse me, let=s wait.  I=m not sure what the next answer is.

Ask a new question.

 

MR. FINLEY:          Yes, Your
Honor.








Q (BY MR. FINLEY)         Did you
give me a key to the mailbox?

 

A       Yes, you had a key to the mailbox in the
apartment.

 

Q       Where did you get the key from?

 

A       Where did I get the key from?

 

Q       Yes.

 

A       From the previous tenants that was there. 
[sic]

 

MR. FINLEY:  Pass the
witness, Your Honor.

 

Shortly
thereafter, the judge excused the jury for the day.  The following exchange
then occurred:

MR. FINLEY:          I request
tomorrow that you instruct the jury about that.

 

[THE PROSECUTOR]:      It=s your question.

 

MR. FINLEY:          I didn=t ask if he found out I went to
prison.  It=s not like I opened the door.

 

THE COURT:          Actually
I didn=t hear it.  I was
guessing that=s what he was going to say, but I thought I stopped
him in time.








The
judge then recessed for the day.  The next morning, the judge and counsel again
discussed the situation, and the court instructed the jury to disregard as
nonresponsive the witness=s statement regarding tax statements,
going into appellant=s apartment, and Athose types of
things.@  Without further
objection or request, appellant then called his next witness.

In order to preserve error for appeal, a party must make a
timely and sufficiently explicit request, objection, or motion.  Tex. R. App. P. 33.1.  By failing to
object when the witness made the statement regarding probation, appellant
failed to preserve the issue for appeal.  See Lagrone v. State, 942
S.W.2d 602, 617-18 (Tex. Crim. App. 1997) (holding that defense counsel failed
to make timely objection when he waited until after prosecutor had passed the
witness).[4] 
Furthermore, appellant requested that the court instruct the jury to disregard
the witness=s statement and the trial court did so.  Appellant did
not then request a mistrial.  Because appellant did not pursue his objection
until he obtained an adverse ruling, he may not complain about the trial court=s actions on
appeal.  See Nethery v. State, 692 S.W.2d 686, 701 (Tex. Crim. App.
1985) (AAppellant must
obtain an adverse ruling in order to preserve a matter for review.@).  Accordingly,
we overrule appellant=s fifth issue.

Judge=s Comment

In his sixth issue, appellant complains that the judge made
inflammatory and harmful comments to appellant in front of the jury.  During
appellant=s cross-examination of one of the investigating
officers, the judge called appellant and the prosecutor to the bench.  The
judge then instructed appellant that certain of his questions called for
hearsay and were therefore improper.  Appellant returned to counsel table and
asked another question:








Q (BY MR. FINLEY)         Detective Ester, did you learn from your
investigation how many times the person that Ms. Godine identified came to the
mailbox?

 

THE COURT:          That=s the type of
question that=s improper and we=re not going to
spend all day doing that.  I just advised you of that.  Improper hearsay
information.

Appellant
then continued questioning the witness.

 

Article 38.05 of the Texas Code of Criminal Procedure
states:

In ruling upon the admissibility of
evidence, the judge shall not discuss or comment upon the weight of the same or
its bearing in the case, but shall simply decide whether or not it is
admissible;  nor shall he, at any stage of the proceeding previous to the
return of the verdict, make any remark calculated to convey to the jury his
opinion of the case.








Tex. Code Crim. Proc. Ann. art. 38.05
(Vernon 1979).  A judge improperly comments on the weight of the evidence when
he or she makes a statement that implies approval of the State=s argument,
indicates disbelief in the defense=s position, or diminishes
the credibility of the defense=s approach to the case.  Simon v. State,
203 S.W.3d 581, 590 (Tex. App.CHouston [14th Dist.] 2006, no pet. h.). 
The rule against such comments is grounded in the fact that A[j]urors are prone
to seize with alacrity upon any conduct or language of the trial judge which
they may interpret as shedding light upon his view of the weight of the evidence,
or the merits of the issues involved.@  Brown v.
State, 122 S.W.3d 794, 798 (Tex. Crim. App. 2003) (quoting Lagrone v.
State, 84 Tex.Crim. 609, 615, 209 S.W. 411, 415 (1919)).  However, unless
the judge=s comments are so egregious as to amount to
fundamental error of a constitutional dimension, a defendant must object in
order to complain about them on appeal.  See Jasper v. State, 61 S.W.3d
413, 421 (Tex. Crim. App. 2001)[5];
see also Tex. R. App. P. 33.1. 
Here, appellant did not object to the judge=s comments.

Appellant argues that the judge=s comments were
improper because they conveyed her opinion that appellant was guilty and
indicated that appellant was wasting everyone=s time with his
cross-examination.  We disagree.  Although the judge=s comments
conveyed her opinion regarding the propriety of appellant=s questions, they
did not indicate the judge=s opinion regarding the strength of
appellant=s case as a whole.[6] 
See In re J.G., 195 S.W.3d 161, 177-79 (Tex. App.CSan Antonio 2006,
no pet.).  Further, while the judge=s statement that Awe=re not going to
spend all day doing that@ may have expressed some irritation with
appellant, it does not rise to the level of Afundamental error
of a constitutional dimension.@  See Jasper, 61 S.W.3d at 421; Murchison
v. State, 93 S.W.3d 239, 261-62 (Tex. App.CHouston [14th
Dist.] 2002, pet. ref=d); Singleton v. State, 91 S.W.3d
342, 351 (Tex. App.CTexarkana 2002, no pet.).  Accordingly, we
overrule appellant=s sixth issue.

We affirm the trial court=s judgment.

 

 

 

 

 

 

/s/      Adele Hedges

Chief Justice

 








 

 

Judgment rendered
and Opinion filed March 13, 2007.

Panel consists of
Chief Justice Hedges and Justices Fowler and Edelman.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  Article 1.051(g) provides as follows:

 

If a defendant wishes to waive his right to counsel,
the court shall advise him of the dangers and disadvantages of self‑representation. 
If the court determines that the waiver is voluntarily and intelligently made,
the court shall provide the defendant with a statement substantially in the
following form, which, if signed by the defendant, shall be filed with and
become part of the record of the proceedings:

 

AI have been advised this ______ day of __________,
19___, by the (name of court) Court of my right to representation by counsel in
the trial of the charge pending against me.  I have been further advised that
if I am unable to afford counsel, one will be appointed for me free of charge. 
Understanding my right to have counsel appointed for me free of charge if I am
not financially able to employ counsel, I wish to waive that right and request
the court to proceed with my case without an attorney being appointed for me. 
I hereby waive my right to counsel.  (signature of the defendant)@

 

Tex. Code Crim. Proc. Ann. art. 1.051(g).





[2]  These facts were established in part through
testimony by the court administrator at the hearing on the defendant=s motion for new trial.





[3]  Testimony at the recusal hearing was inconsistent
regarding whether appellant requested medical attention on the first approach.





[4]  In arguing that the trial court=s alleged error was harmful, appellant cites a case in
which the court held that a question by a district attorney was so harmful that
the judge should have instructed the jury to disregard it on his own motion.  See
Childress v. State, 241 S.W. 1029, 1033 (Tex. Crim. App. 1922).  Appellant,
however, does not contend that in the present circumstances (a nonresponsive
answer to cross-examination by the defense), the trial court was required to
immediately sua sponte instruct the jury.  To the extent such rule exists, it
appears limited to situations in which the prosecuting attorney asks a clearly
improper question.  See Moncrief v. State, 707 S.W.2d 630, 634-35 (Tex.
Crim. App. 1986) (Teague, J., concurring).  Furthermore, the judge in the
present case did in fact instruct the jury to disregard upon appellant=s request.





[5]  In Jasper, the Court acknowledged the
plurality=s holding in Blue v. State, 41 S.W.3d 129, 132
(Tex. Crim. App. 2000), that a judge=s
comments could be so egregious as to amount to fundamental error of a
constitutional dimension and thus be reversible error even in the absence of an
objection.  61 S.W.3d at 421.  Declining to determine whether the plurality
rule is the correct standard, the Jasper court held that the comments
before it did not rise to the level required under Blue.  Id.





[6]  Appellant suggests that the trial judge was
incorrect in her assessment of whether appellant=s question called for hearsay; however, he does not raise this
suggestion as a ground for reversal.