### D. R. LAGRONE V. THE STATE.

#### No. 4815.   Decided February 19, 1919.

**1.—Murder—Malice Aforethought—Charge of Court.**

Where, upon trial of murder, the court in his charge gave a correct definition of malice aforethought according to approved precedent, there was no reversible error. Following Davis v. State, 204 S. W. Rep., 652, and other cases.

**2.—Same—Self-defense—Charge of Court.**

Where, upon trial of murder, the court gave a correct charge on self-defense covering the different phases raised by the evidence and also submitted a requested charge thereon, there was no reversible error on that account.

**3.—Same—Self-defense—Requested Charge.**

Where, upon trial of murder, it appeared from the State's evidence that there was an interval between the two shots fired by the defendant, during which the deceased requested the defendant not to shoot any more, etc., the court was justified in refusing a requested charge which instructed the jury to acquit if there was not sufficient time between the two shots for the defendant to determine that the danger to his life had ceased.

**4.—Same—Manslaughter—Charge of Court.**

Where, upon trial of murder, the evidence showed that the defendant fired two shots at the deceased, and that the deceased in the interval between the shots requested the defendant not to shoot any more, saying that he might recover from the wound already received, the court's failure, over the objection of the defendant, to inform the jury as to the law that would govern in the event the jury found that the first shot fired by defendant was justifiable, and the second shot was not, that his offense in that event might not have been higher than manslaughter, was reversible error. Following Hobbs v. State, 16 Texas Crim. App., 522, and other cases.

**5.—Same—Evidence—Hearsay—Self-serving Declaration.**

Upon trial of murder, there was no error in the court's refusal to permit defendant to prove that, in a conversation with another party, defendant had said that the officers had told the deceased to kill defendant, as this testimony was hearsay and self-serving.

**6.—Same—Threats—Evidence.**

Upon trial of murder, there was no error in rejecting testimony that some time before the homicide deceased had made threats which did not indicate that they were made against the defendant. Following Heffington v. State, 41 Texas Crim. Rep., 318, and other cases.

Vol. 84 Crim.-39

**7.—Same—Manslaughter—Burden of Proof—Charge of Court.**

Where, upon trial of murder, the court's charge on manslaughter, taken as a whole, did not shift the burden of proof, but simply told the jury that if they believed defendant guilty of some grade of unlawful homicide they should resolve any doubt existing in favor of the defendant and acquit him of the higher offense, there was no reversible error. Following Hendricks v. State, 69 Texas Crim. Rep., 209, and other cases. Distinguishing Huddleston v. State, 54 Texas Crim. Rep., 93, and other cases. However, the court should so frame his charge upon another trial as to leave no question on this point.

**8.—Same—Charge of Court—Self-defense—Threats.**

While it is true that the fact that defendant had made antecedent threats would not deprive him of the right of self-defense, yet there was no error in refusing a requested charge instructing the jury that evidence of threats made by defendant against the life of deceased would not deprive defendant of the right of self-defense, as the court's charge did not in any sense limit the defendant's right of self-defense. Following Owen v. State, 52 Texas Crim. Rep., 68, and other cases; overruling Stanley v. State, 62 Texas Crim. Rep., 306.

**9.—Same—Oral Instructions—Practice on Appeal.**

Where defendant objected to oral instruction to the jury of the trial judge, the jury having reported a disagreement, no decision thereof is made herein, as the judgment is reversed and the cause remanded on other grounds, but the delicacy of the situation in which the trial judge thereby placed himself is emphasized.

Appeal from the District Court of Upshur. Tried below before the Hon. J. R. Warren.

Appeal from a conviction of murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Sanders & Florence* and *Simpson, Lasseter & Gentry,* for appellant.— On question of burden of proof: Huddleston v. State, 54 Texas Crim. Rep., 93, 112 S. W. Rep., 64; Sessions v. State, 197 S. W. Rep., 718.

On question of manslaughter: Hobbs v. State, 16 Texas Crim. App., 522; Holmes v. State, 68 Texas Crim. Rep., 17, 150 S. W. Rep., 926.

On question of charge of self-defense and threats: Stanley v. State, 62 Texas Crim. Rep., 306, 137 S. W. Rep., 703.

On question of declaration of defendant: Brown v. State, 74 Texas Crim. Rep., 356, 169 S. W. Rep., 437.

On question of oral instruction: Pecht v. State, 80 Texas Crim. Rep., 452, 192 S. W. Rep., 243; Foster v. State, 51 Texas Crim. Rep., 77, 100 S. W. Rep., 1159.

*E. A. Berry,* Assistant Attorney General, for the State.

MORROW, Judge.—This appeal is from a conviction for murder, with punishment fixed at confinement in the penitentiary for five years.

The appellant shot and killed deceased, using a shotgun, and firing two shots. The deceased was the husband of appellant's daughter. There was evidence that he had treated her harshly; that there was bad feeling between the parties, and mutual threats. The deceased was

on his wagon, which was empty and had a frame for hauling wood. There was evidence that there was a coat lying near the deceased; and the facts show that appellant, while walking on the public road, met the deceased, and from his testimony the theory arises that the deceased made a demonstration, which was interpreted by the appellant as an effort to get a pistol or gun from the coat, and that from this demonstration and the previous threats of the deceased the issue of self-defense arose. From the State's testimony, developed from the son of the deceased, who was an eyewitness, there was no demonstration by the deceased, and between the firing of the first and second shots deceased asked appellant not to shoot again as he might recover from the injury already received.

The issues of murder, manslaughter, self-defense and the law of communicated threats were submitted in a charge to which the appellant has addressed several criticisms. The definition of malice aforethought was one that has been approved on previous occasions. Davis v. State, 204 S. W. Rep., 652; Tooney v. State, 5 Texas Crim. App., 163; Gallaher v. State, 28 Texas Crim. App., 266.

The law of self-defense as embodied in the court's charge, we think, is subject to no just criticism addressed to it by the appellant. It submitted without qualification the law of self-defense upon apparent danger, and the law of self-defense arising out of a demonstration manifesting an intention to execute a threat previously communicated to appellant, In addition to this the court, at the request of appellant, instructed the jury that if appellant feared an attack from the deceased he had a right to arm himself, and that the possession of a shotgun at the time of the homicide was no violation of law, and would not authorize a conviction; and also instructed that in determining whether the defendant acted in self-defense, it would be the duty of the jury to view the facts and circumstances from his standpoint as it reasonably appeared to him at the time, and in so doing they might consider the defendant's knowledge of the character of the deceased and threats made by him against the appellant of which he had information, and the previous acts and conduct of deceased.

One of the special charges requested and refused would have advised the jury that if the first shot was fired in self-defense and not sufficient time had elapsed between the first and second shot for the defendant to determine that the danger to his life had ceased, or if they had a reasonable doubt thereof, to acquit. It occurs to us that if the appellant had requested the court to instruct the jury on the law authorizing him to continue to shoot until the danger ceased as viewed from his standpoint, that it would have been proper for the court to give such charge. The one quoted, however, does not appear to be in substance such a charge, but instructs an acquittal if there was not sufficient time elapsed within which to determine that the danger had ceased, thereby basing the right to continue to shoot not upon whether the appellant at the time that he fired the second shot was acting under the apprehension

of danger, but upon whether there had been a sufficient lapse of time for him to determine the contrary, whether in fact he had determined the contrary or not. From the State's evidence it appeared that there was an interval between the two shots, in which interval the deceased requested appellant not to shoot any more, stating that he might recover from the wound already received. From this statement, whatever time had elapsed, the jury might have determined that the danger had ceased, and appellant had notice thereof, and we think the court was justified in refusing to give the requested charge, ignoring this phase.

Appellant excepted to the charge on the law of manslaughter because of its failure to inform the jury the law that would govern in the event they found the first shot fired by appellant was justifiable and the second shot was not. Presenting the same view more in detail, the appellant presented a special charge, to the refusal of which exception was duly reserved.

The main charge on manslaughter is as follows:

"Although the law provides that the provocation causing the sudden passion must arise at the time of the killing it is your duty in determining the adequacy of the provocation, if any, to consider in connection therewith all the facts and circumstances in evidence in the case transpiring before the homicide; and if you find that, by reason thereof, the defendant's mind, at the time of the killing, was incapable of cool reflection, and that such facts, if any, and circumstances, if any, were sufficient to produce such state of mind in a person of ordinary temper, then the proof as to the sufficiency of the provocation, if any, satisfies the requirements of the law; and so in this case you will consider the threats, if any, of the deceased, and the former conduct, if any, of the deceased toward the defendant, and all the other facts and circumstances in evidence transpiring before the homicide in determining the condition of the defendant's mind at the time of the killing, and the adequacy of the cause, if any, producing such condition."

The law applicable to a state of facts such as arises out of the State's testimony touching the incidents of the homicide is illustrated by the quotation from the opinion of Judge Willson in Hobbs v. State, 16 Texas Crim. App., 522, as follows:

"Again, the learned judge instructed the jury that the defendant's right of self-defense ceased when the danger, real or apparent, had ceased. This was correct. But suppose, in defending himself against a violent attack, or a supposed violent attack, he became excited by passion to such an extent as to render his mind incapable of cool reflection, and under this state of excitement he carried his right of self-defense too far, used more force than was necessary to his protection, fired one or more shots after all real or apparent danger had ceased, but before his mind had had time to cool, and from wounds thus inflicted death had resulted, would this have been murder? We think not. Suppose the first shot fired by the defendant was justifiable, but

that the two shots fired by him which struck Whiteley were fired after the danger, real or apparent, which threatened the defendant had ceased, but that he fired the said shots under the immediate influence of sudden passion, arising from the supposed deadly conflict in which an instant before he had been engaged, and fired them before he had had reasonable 'cooling time,' reasonable time to realize that he was no longer in any danger, would not this state of facts, if the shots had killed Whiteley, constitute manslaughter and not murder? We think a homicide under these circumstances would not be of a higher grade than manslaughter."

If appellant fired the first shot in self-defense, and fired the second one after the danger had ceased, as viewed from his standpoint, his offense might not have been higher than manslaughter, if the jury believed that the second shot, though wrongfully fired, was fired under the influence of a sudden passion aroused by an adequate cause. The appellant having sought by objection to the failure to embody this phase of the law in the main charge, and by requesting a special charge embracing it, we are of opinion that the court was in error in failing to either amend his main charge, or give the special charge requested. Judge Ramsey, discussing the same question in Ross v. State, 53 Texas Crim. Rep., 279, said:

"It has been said, in discussing the matter of cooling time, that, like the provocation itself, it must depend upon the nature of man and the laws of the human mind as well as upon the nature and circumstances of the provocation. That no precise time, therefore, in hours or minutes can be laid down by the courts as a rule of law within which the passions must be held to have subsided and reason to have resumed its control, without setting at defiance the laws of man's nature, and ignoring the very principle on which provocation and passion are allowed to be shown in mitigation of the offense. The question is one of reasonable time, depending upon all the circumstances of the particular case, and in a majority of cases is one peculiarly within the province of the jury to determine. The condition of the mind is not a question of time or law, but one of fact to be left to the determination of the jury. Jones v. State, 33 Texas Crim. Rep., 492; Watson v. State, 50 Texas Crim. Rep., 171."

The bill of exceptions complaining of the refusal of the court to permit him to prove that in a conversation with Powers the appellant had told Powers that the officers had told deceased to kill him, and further said that he, Powers, was going to get the appellant into trouble, does not show error. As presented the testimony appears to be hearsay and self-serving. It does not appear to be a part of any conversation drawn out by the State, but is offered as independent testimony by the appellant.

We also think there was no error in rejecting the proffered testimony of Mitchell that some time before the homicide he had heard the deceased say, "Damn them, I will get even with them yet," for the reason

that the bill discloses no circumstance or fact indicating that the remark or threat was made concerning the appellant. Gregory v. State, 48 S. W. Rep., 578; Highsmith v. State, 41 Texas Crim. Rep., 37; Heffington v. State, 41 Texas Crim. Rep., 318.

The jury were required if they found beyond a reasonable doubt that appellant was guilty of culpable homicide and entertained a reasonable doubt of his guilt of murder, that they would consider whether he was guilty of manslaughter, and were further told that if they believed from the evidence beyond a reasonable doubt that he, with a deadly weapon, in a sudden passion aroused by an adequate cause, as the same has been heretofore explained, and not in defense of himself against an unlawful attack producing a reasonable expectation or fear of death or serious bodily injury, killed the deceased, to find him guilty of manslaughter. The appellant claims that the effect of this charge was to shift the burden of proof. Considering the paragraphs of the charge together, we think it was made plain to the jury that, believing the appellant guilty of some grade of unlawful homicide, they should resolve any doubt existing in favor of the appellant and acquit him of the higher offense. This construction was put upon a similar charge in the case of Hendricks v. State, 69 Texas Crim. Rep., 209. See, also, Best v. State, 58 Texas Crim. Rep., 331; Spangler v. State, 42 Texas Crim. Rep., 233.

We are referred to Huddleston v. State, 54 Texas Crim. Rep., 93, and Melton v. State, 47 Texas Crim. Rep., 451, as sustaining appellant's position that the charge given placed an undue burden upon the appellant. These cases are distinguishable from the case at bar on account of the fact that in neither of them do we find any qualifying clause such as was contained in the charge in this case and in the Hendricks case, supra, and for the further reason that those cases were dealing with matters made by statute adequate cause to reduce the homicide to manslaughter. However, we believe that the trial court, in giving a charge on manslaughter upon another trial, should so frame his charge as to leave no question that if they reject the theory of self-defense and entertain a reasonable doubt as between the offenses of murder and manslaughter, that the conviction should be for no higher grade of offense than manslaughter.

In our opinion there was no error in refusing the request of appellant to instruct the jury that the evidence of threats made by the appellant against the life of deceased will not deprive appellant of the right of self-defense. It is quite true that the fact that appellant had made antecedent threats would not deprive him of the right to defend himself, but the court in his charge did not intimate to the jury that it would do so, nor in any sense limit the defendant's right of self-defense. Mr. Branch in his Criminal Law, section 479, says: "Antecedent threats made by the defendant against the deceased are admissible to show motive or malice, or to shed light upon the issue of who began the difficulty," citing McKinney v. State, 8 Texas Crim. App.,

626; Anderson v. State, 15 Texas Crim App., 447; Frizzell v. State, 30 Texas Crim. App., 55; Brown v. State, 56 Texas Crim. Rep., 389; McCoy v. State, 27 Texas Crim. App., 431; Cline v. State, 33 Texas Crim. Rep., 491; Owen v. State, 52 Texas Crim. Rep., 68.

There was an issue in the case with reference to what motive actuated the appellant when he fired at the deceased, and as to whether the difficulty was initiated by the demonstration of the deceased, or by the assault made by the defendant. In the solution of these conflicting theories the jury were entitled to consider the previous difficulties, and the relation of the parties; and their mutual expressions of ill-will one against the other. It was not incumbent upon the court, in our judgment, to qualify or limit the purpose for which the evidence of threats was before the jury. The case of Stanley v. State, 62 Texas Crim. Rep., 306, which is relied upon by the appellant, is expressly based upon the principle laid down in the case of Ball v. State, 29 Texas Crim. App., 107, to the effect that when the court finds occasion in his charge to place a limitation upon the right of self-defense, that it is often necessary, in the protection of the rights of the accused, to explain to the jury that certain acts of the accused at the time of the homicide are not to be taken as a limitation of his right of self-defense. This principle, so far as we are aware, unless the case of Stanley v. State, supra, is an exception, has been confined to cases in which the right of self-defense is qualified. See Williford v. State, 38 Texas Crim. Rep., 396; Smith v. State, 81 Texas Crim. Rep., 368, 195 S. W. Rep., 598, and cases therein cited. In so far if any as the Stanley case is in conflict with this rule, we think it should not be followed.

The jury, after deliberating upon their verdict for some time, reported their disagreement. The trial judge called them into court and gave them certain verbal instructions, which were made the basis of objection at the time and complaint here. The disposition of this appeal is upon other grounds, and the matter mentioned is not likely to recur. It is a most delicate undertaking to have verbal communications with the jurors touching the case on trial after the retirement of the jury, and should be attempted only upon rare occasions and impelled by the soundest reasons, and too much caution can not be exercised in the effort to avoid impressing the jury with the idea that the court entertains any impressions of the case which he wishes them to know, and putting before them matters which should not enter into or affect their deliberations, such as the expense incident to a mistrial, should in all cases be avoided. To the jury the language and conduct of the trial court have a special and peculiar weight. Simmons v. State, 55 Texas Crim. Rep., 446; Kelley v. State, 33 Texas Crim. Rep., 31; Jones v. State, 51 S. W. Rep., 950. The law contemplates that the trial judge shall maintain an attitude of impartiality throughout the trial. Jurors are prone to seize with alacrity upon any conduct or language of the trial judge which they may interpret as shedding light upon his view of the weight of the evidence, or the merits

of the issues involved.   The delicacy of the situation in which he is placed requires that he be alert in his communications with the jury not only to avoid impressing them with any view that he has, but to avoid in his manner and speech things that they may so interpret. Kirk v. State, 35 Texas Crim. Rep., 224; Crook v. State, 27 Texas Crim. App., 198; Anderson v. State, 83 Texas Crim. Rep., 261, 202 S. W. Rep., 946.

A reversal of the judgment is ordered on account of the error in the charge pointed out.

*Reversed and remanded.*