**005-15**

CAUSE NO. PD-0005-15

ORIGINAL

IN THE
COURT OF CRIMINAL APPEALS
OF TEXAS

RECEIVED IN
COURT OF CRIMINAL APPEALS

MAR 20 2015

Abel Acosta, Clerk

GARY EVAN MATTHEWS,
Petitioner,

V.

THE STATE OF TEXAS

Petition in Cause No. F46739
from the 413th Judicial District Court of
Johnson County, Texas
and
Cause No. 10-13-00401-CR
in the Court of Appeals for the
Tenth Supreme Judicial District
of Texas at Waco

FILED IN
COURT OF CRIMINAL APPEALS

MAR 20 2015

Abel Acosta, Clerk

PRO SE PETITION
FOR DISCRETIONARY REVIEW

GARY EVAN MATTHEWS
TDCJ-CID# 01883270
WILLIAM P. CLEMENTS, JR. UNIT
9601 SPUR 591
AMARILLO, TEXAS 79107
PETITIONER, PRO SE

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

PAGE

Index of Authorities............................................... ii

Statement Regarding Oral Argument................................. 1

Statement of the Case............................................. 2

Statement of Procedural History................................... 2

Ground for Review................................................. 2

### 1.

THE COURT OF APPEALS ERRED IN HOLDING THAT THE TRIAL COURT'S COM-
MENTS TO THE JURORS ON THE EVIDENCE IN THE TRIAL AT THE CLOSE OF
THE STSTE'S CASE-IN-CHIEF DID NOT DENY PETITIONER HIS RIGHT TO DUE
PROCESS OF LAW.

Reason for Review................................................. 2

1. In holding that the Trial Court's comments to the jurors on the
   evidence in the trial at the close of the State's case-in-chief
   did not deny Petitioner his right to due process of law, the
   court of appeals decided an important question of State and Fe-
   deral law in conflict with the applicable decisions of the Court
   of Criminal Appeals and the United States Supreme Court.

Prayer for Relief................................................. 6

Certificate of Service............................................ 8

Appendix

Opinion of the Tenth Court of Appeals............................. 9

Opinion by Justice REX D. DAVIS
Panel consisted of Chief Justice TOM GRAY,
Justice REX D. DAVIS, and Justice AL SCOGGINS

# INDEX OF AUTHORITIES

PAGE

CASE LAW

Blue v. State.............................................. 6
    41 S.W.3d 129, 131 (Tex.Crim.App. 2000)(plurality op.)

Brown v. State............................................. 4
    122 S.W.3d 794, 798 (Tex.Crim.App. 2003)

Brown v. State............................................. 4
    541 U.S. 938, 124 S.Ct. 1678, 158 L.Ed.2d 359 (2004)

Cain v. State.............................................. 5
    947 S.W.2d 262, 264 (Tex.Crim.App. 1997)

Gary Evan Matthews v. The State of Texas................... 3,9
    Tex. App. No. 10-13-00401-CR

Kirby v. United States..................................... 3
    174 U.S. 47, 55, 19 S.Ct. 574, 577, 43 L.Ed. 890 (    )

Lagrone v. State........................................... 4
    84 Tex.Crim. 609, 615-616, 209 S.W. 411, 415 (1919)

Marin v. State............................................. 5
    851 S.W.2d 275, 279 (Tex.Crim.App. 1993)

Saldano v. State........................................... 5
    70 S.W.3d 873, 887-88 (Tex.Crim.App. 2002)

STATUTES AND RULES

Tex. Code Crim. Proc. Art. 2.03(b)......................... 4

Tex. Code Crim. Proc. Art. 38.03.......................... 4

Tex. Code Crim. Proc. Art. 38.05.......................... 4

Tex. R. App. Proc. 33.1(a)................................ 5

CAUSE NO. PD-0005-15


IN THE
COURT OF CRIMINAL APPEALS
OF TEXAS

---

GARY EVAN MATTHEWS,
Petitioner,

V.

THE STATE OF TEXAS

---

Petition in Cause No. F46739
from the 413th Judicial District Court of
Johnson County, Texas
and
Cause No. 10-13-00401-CR
in the Court of Appeals for the
Tenth Supreme Judicial District
of Texas at Waco

---

PRO SE PETITION
FOR DISCRETIONARY REVIEW

---

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:

COMES NOW GARY EVAN MATTHEWS, Petitioner pro se, and re-

spectfully petitions the Court to review the judgement affirming

his conviction for the offense of murder in Cause No. F46739.

STATEMENT REGARDING ORAL ARGUMENT

The ground for review set forth in this petition concerns

conflicting opinions of different courts of appeals on the same

point of law, and oral argument would be helpful to the Court

in distinguishing these authorities and arriving at the approach

- 1. -

that is consistent with the opinions of this Court.

## STATEMENT OF THE CASE

The Petitioner was convicted by a jury of the offense of murder after a plea of not guilty; the punishment was assessed by the jury at thirty-eight (38) years confinement in the Texas Department of Criminal Justice - Correctional Institutions Division. This conviction was affirmed by the Court of Appeals for the Tenth Supreme Judicial District at Waco, Texas on the 11th day of December, 2014.

## STATEMENT OF PROCEDURAL HISTORY

The Court of Appeals rendered its opinion affirming Petitioner's conviction on December 11, 2014. No motion for rehearing was filed by Petitioner. A motion for an extension of time to file pro se petition for discretionary review and motion to suspend T.R.A.P. 9.3(b) were granted on January 8, 2015. This petition will be considered timely filed if done so on or before March 13, 2015.

## GROUND FOR REVIEW

THE COURT OF APPEALS ERRED IN HOLDING THAT THE TRIAL COURT'S COMMENTS TO THE JURORS ON THE EVIDENCE IN THE TRIAL AT THE CLOSE OF THE STATE'S CASE-IN-CHIEF DID NOT DENY PETITIONER'S RIGHT TO DUE PROCESS OF LAW.

## REASONS FOR REVIEW

At trial, at the end of the second day of testimony, the State concluded its case-in-chief. Immediately after that, but before the defense began its testimony, the Trial Court made the following comment to the jury:

- 2. -

THE COURT: Ladies and gentlemen, the State has rested, which means they've completed their Case-in-Chief, about 25 minutes faster than I thought they would so they did a good job. And what the next thing - there's some things that the Court has to do with the attorneys between now and when I can ask the Defense what their next move is going to be, so I will excuse you for today. But I tell you that the case is on the schedule that I thought it would be and we're in good shape.

So if you'll accompany the baliff out of the courtroom. (R.R. Vol 8, p. 251 lns 17-25 and p. 252 lns 1-2).

This comment to the jury by the Trial Court, the ultimate authority figure in the courtroom, impaired the presumption of innocence and rendered Petitioner's trial arbitrary and fundamentally unfair in violation of his right to Due Process of Law.

The presumption of innocence is a fundamental principle of American Jurisprudence. The United States Supreme Court held that:

"The presumption of innocence of an accused attends him throughout trial and his relation to every fact that must be established in order to prove his guilt beyond a reasonable doubt."

Kirby v. United States, 174 U.S. 47, 55, 19 S.Ct. 574,577, 43 L.Ed. 890 (    ).

The Supreme Court has never waivered from this foundational principle, and the State of Texas is one of the few states who

- 3. -

have codified this presumption of innocence. See Article 38.03, Texas Code of Criminal Procedure, and in particular Article 2.03(b), which reads in pertinent part:

"Neglect of Duty"

"It is the duty of the Trial Court, the attorney represneting the accused, the attorney representing the State and all peace officers to conduct themselves... as not to impair the presumption of innocence."

Furthermore, Article 38.05 of the Texas Code of Criminal Procedure provides that:

"[I]n ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case."

Stated differently, Due Process of Law requires a neutral and detached judge. This Court has previously held that this fact is critical to the function of a fair and impartial trial because "[j]urors are prone to seize with alacrity upon any conduct or language of the trial judge which they may interpret as shedding light upon his view of the weight of the evidence, or the merits of the issues involved." Brown v. State, 122 S.W.3d 794, 798 (Tex.Crim.App. 2003) cert. denied, 541 U.S. 938, 124 S.Ct. 1678, 158 L.Ed.2d 359 (2004)(quoting Lagrone v. State,

- 4. -

84 Tex.Crim. 609, 615-616, 209 S.W. 411, 415 (1919)). Stated differently, members of a jury have a tendency or inclination to grasp with cheerful readiness anything the judge says or does as an opinion on the proceedings. Therefore, instead of arguing about what exactly the trial judge was commenting on when he stated that the State "did a good job," the Court of Appeals should have followed presedent set forth by both this Court and the United States Supreme Court and ruled the comment harmful in and of itself given the fact that it was totally unnecessary.

Not only did the Court of Appeals err in finding this improper comment harmless, but they also ruled that no error was preserved for appellate review because Petitioner's trial counsel failed to object to the comment when it was made.

As a general rule, in order to preserve a complaint for review on appeal, the claimed error must have been presented in the trial court, thereby providing the trial court the opportunity to correct any error during the course of trial. See Tex. R. App. Proc. 33.1(a). This Court has held that "our system may be thought to contain rules of three distinct kinds: (1) absolute requirements and prohibitions; (2) rights of litigants which must be implemented by the system unless expressly waived; and (3) rights of litigants which are to be implemented upon request." Marin v. State, 851 S.W.2d 275, 279 (Tex.Crim.App. 1993), modified in part by Cain v. State, 947 S.W.2d 262, 264 (Tex.Crim.App. 1997); Saldano v. State, 70 S.W.3d 873, 887-88 (Tex.Crim.App. 2002). An accused's right to Due Process of Law

- 5. -

is considered so fundamental to the proper functioning of our adjudicatory system that it cannot be forfeited and is not extinguished by inaction alone. <u>Blue v. State</u>, 41 S.W.3d 129, 131 (Tex.Crim.App. 2000)(plurality op.). Instead, for an accused to lose such a fundamental right, he or she must expressly relinquish that right. <u>Id</u>.

In the case at bar, the Trial Court's improper and completely unnecessary comment on the proceedings violated at least two of the Petitioner's fundamental rights; his right to due process of law and his right to the presumption of innocence. A thorough review of the trial records will reveal that at no time did the Petitioner expressly relinquish either of these rights. As such, his right to have this complaint of fundamental error reviewed on appeal cannot be waived simply because his trial counsel failed to object to the comment at the time it was made.

This Court should grant review of the Court of Appeals decision in this case because failure to do so will only encourage other courts of appeal to forego reviewing claims for violations of fundamental rights simply because they were'nt objected to at trial. This in turn would render arbitrary and accused's right to meaningful review on appeal.

<u>PRAYER FOR RELIEF</u>

For the reasons herein alleged, Petitioner was denied a fair trial and due process of law in Cause No. F46739. Therefore, Petitioner prays this Court grant this petition and, upon reviewing the judgement entered by the Tenth Court of Appeals,

- 6. -

reverse this cause and remand it for a new trial.

Respectfully submitted,

/s/ *Gary Evan Matthews*

GARY EVAN MATTHEWS
TDCJ-CID# 01883270
William P. Clements, Jr. Unit
9601 Spur 591
Amarillo, Texas 79107
PETITIONER, PRO SE

## CERTIFICATE OF SERVICE

This is to certify that copies of the above-entitled and numbered petition for review have been served on both the District Attorney of Johnson County, Texas, and the State Prosecuting Attorney, by delivery of a true copy to them, by mail, by depositing same, postpaid, in an official depository under the care and custody of the United States Postal Service on the 12th day of March, 2015, enclosed in a wrapper properly addressed as follows:

> HONORABLE DALE HANNA
> Johnson County District Attorney
> Guinn Justice Center
> 204 South Buffalo
> Cleburne, Texas 76033
>
> HONORABLE LISA C. McMINN
> State Prosecuting Attorney
> P.O. Box 13046
> Austin, Texas 78711-3406

/s/ A J Evan Matthews
Petitioner, pro se

- 8. -

APPENDIX


COPY OF OPINION FROM THE TENTH COURT OF APPEALS IN:

GARY EVAN MATTHEWS   V.   THE STATE OF TEXAS

TEX. APP. NO. 10-13-00401-CR

DELIVERED DECEMBER 11, 2014

OPINION BY JUSTICE REX D. DAVIS

PANEL CONSISTED OF CHIEF JUSTICE TOM GRAY,
JUSTICE REX D. DAVIS, AND JUSTICE AL SCOGGINS



# IN THE
# TENTH COURT OF APPEALS

## No. 10-13-00401-CR

**GARY EVAN MATTHEWS,**

Appellant

v.

**THE STATE OF TEXAS,**

Appellee

From the 413th District Court
Johnson County, Texas
Trial Court No. F46739

## MEMORANDUM OPINION

A jury found Appellant Gary Evan Matthews guilty of murder and assessed his punishment at thirty-eight years' imprisonment and a $10,000 fine. This appeal ensued.

### Issue No. 1

In his first issue, Matthews contends that the trial court erred in admitting testimony of other wrongs or acts over his objection because (1) the State failed to provide proper notice under Rule of Evidence 404(b), (2) the probative value of the

testimony was outweighed by its prejudicial effect, and (3) the testimony constituted hearsay.

*Background*

In a hearing outside the presence of the jury, Andy Smith testified as follows:

Q.   [By Prosecutor]  All right.  And did you, in fact, see Mr. Matthews on August 19th, 2012?

A.   Yes, I did.

Q.   And can you tell me about your initial interaction with him that day?

A.   He approached me, was asking to borrow a pole saw to trim a tree in his property.  I was mowing Donna's front yard at the time.  And I did not allow him to take my pole saw.  I asked him, "What do you need?"  I offered to go ahead and cut the branches myself.  It was there in the front yard.  It was just a few branches.

Q.   All right.  And did the two of you have a conversation?

A.   Yes, we did.  After cutting the branches, yeah, we did have a conversation, a good, at least 20 minutes, probably.

Q.   And what did Gary say to you during that conversation?

A.   Um, I remember that  - -  I think he mentioned starting off was there was a wood carving statue, I don't know, dead tree stump in the front yard that he said he  - -  that this character, whatever it was, was overlooking the neighborhood just in case something went down.  That he had lots of guns and ammunition, that  - -  enough to take care of any situation that might arise.

Q.   All right.  Did he say anything else to you?

A.   Yeah, there were other conversations.  He mentioned that he was a three-time Purple Heart winner during Vietnam.  That he  - -  there was conversation about being a European marshal [sic] arts champion.  That I believe it was Chuck Norris or somebody like that came to visit him

in a tournament and that they hung out. I remember some of those conversations.

Q. Okay.

A. He also mentioned some other conversations that - - kind of involving the weapons and the guns, that he had altered some of those to make them more powerful.

Q. Okay. And did he say anything else?

A. Yes, there were some that kind of evolved around that; he mentioned that in this - - he said this in a few other conversations prior to this, but I remember that day that he did mention that he could, indeed, kill somebody and claim self-defense if - - and he could get away with it if that other party had something in their hands that could be construed as, you know, a lethal weapon or whatever. He described it like in shooting pool, if the other person had a cue stick or something of that nature in their hand, that he could, indeed, kill them with his bare hands, with his marshal [sic] arts background or with any other device, and get away with it.

Q. And get away with it?

A. And get away with it, yes.

Q. And why is it that you would not let him use the pole saw that day himself?

A. Um, well, he approached me. He had - - in his hand, he had alcohol and he was - - I could tell he was intoxicated or at least partially intoxicated. And another reason, I don't like people using my equipment.

Q. Yes, sir.

A. I don't just give it to anybody. But I thought I could probably just take care of it and be done with it and keep peace and move on.

Q. Yes, sir. And approximately what time that day on August 19th, 2012, did he say these things to you?

Matthews v. State

A. He first approached me approximately 4:00 in the afternoon.

Q. Okay. And was this, in fact, the same day that Bradley Kidd was --

A. Yes.

Q. -- shot?

A. Yes, it was.

Matthews objected to this testimony, arguing that the State failed to give notice under Rule 404(b) of its intent to offer the evidence; that the testimony constituted inadmissible extraneous offenses under Rule 404(b); and that the prejudicial effect of the testimony outweighed its probative value. The trial court overruled the objections, and Smith testified accordingly on direct examination before the jury.

Subsequently, on redirect examination of Smith, the following exchange occurred:

Q. [By Prosecutor] And, again, why did you give this second statement?

A. Because I just felt like I -- I'd left out a lot of stuff. I was -- the whole thing, just shocking, it was devastating.

Q. Right.

A. And I don't know. I had a hard time thinking about what I'm going to write down. This just happened.

Q. Okay. And from August 19th, 2012, to today, has your version of events as what happened ever changed?

A. Has it?

Q. Has it ever changed?

A.     No.

Q.     And in regard to your second statement, there was some talk about what was or wasn't in there, but in your second statement, you do write "I've been in several conversations - -"

[Defense Counsel]:  Objection, Judge.  That's improper for him to - - he's testifying.  It's not a question.

[Prosecutor]:  I'm reading what's in the second statement.  I believe it's already been explored in great detail.

....

[Defense Counsel]:  He's reading from someone's statement. That's not a question.  He's testifying.

THE COURT:  Were you going to ask a question?

[Prosecutor]:  Yes, sir, I'm going to say, "This statement that's made in your statement, is that correct?  Did you put that in your second statement?"  Because that's what was examined in cross-examination.

THE COURT:  The objection is overruled.

Q.     (BY [Prosecutor])  Sir, in your second statement, did you say, "I've been in several - -"

[Defense Counsel]:  Judge, I'm going to object again.  He's reading from - - that's hearsay.  It's not - - I'm using it for impeachment. He's testifying and bolstering what someone's written statement is.  That's improper.  I object to it.

THE COURT:  Overruled.

Q.     (BY [Prosecutor]) Sir, again, in your second statement, did you say "I've been in several conversations with Gary prior and he always seemed fascinated with altercations - -"

[Defense Counsel]:  Judge, again, I'm going to object again. That's an improper way to examine the witness.

THE COURT: Overrule.

[Defense Counsel]: Can we approach the witness, Judge --

THE COURT: No.

[Defense Counsel]: -- I mean the bench.

THE COURT: No. Overrule. Sit down.

Q.      (BY [Prosecutor]) Sir, in your second statement, did you say, "I have been in several conversations with Gary prior and he always seemed fascinated with altercations where he could kill someone"?

[Defense Counsel]: Again, Judge, I'm going to object for the record. This is a violation of the Motion in Limine. We're not having a hearing. This is an improper way to -- it's hearsay, it's bolstering, Your Honor, and it's -- he's -- the Counsel's testifying. So I'm going to object to this line of questioning.

THE COURT: I'll overrule it. You've made that objection and I've overruled that objection, so the record is clear on that point.

Q.      (BY [Prosecutor]) Sir, again, in your second statement, did you say "I've been in several conversations with Gary prior and he always seemed fascinated with altercations where he could kill someone and get away with it"? Did you say that, sir?

A.      Yes, sir.

Q.      Did you also say, "He mentioned that if the other person had a weapon of any kind in their hands or possession he could kill them with his bare hands"?

[Defense Counsel]: Objection, leading.

THE COURT: Overruled.

Q.      Did he also say, sir, "He mentioned that if the other person had a weapon of any kind in their hand or possession he could kill them with his bare hand because he's an expert level in marshal [sic] arts and then he could claim that it was in self-defense"?

[Defense Counsel]: Objection, leading.

A. Yes, sir.

*Rule 404(b) Notice*

We begin with Matthews's complaint that the trial court erred in admitting testimony of other wrongs or acts because the State failed to provide proper notice under Rule of Evidence 404(b). More specifically, Matthews argues that the statements that

> he had lots of guns and ammunition, enough to take care of any situation that might arise, that [he] mentioned that he was a three-time Purple Heart winner during Vietnam, that [he] was a European martial arts champion, that he hung out with Chuck Norris or somebody like that who came to visit him in a tournament, and that [he] always seemed fascinated with altercations where he could kill someone and get away with it

were not contained in any of the State's notices of intent to introduce evidence of extraneous matters; therefore, these statements were inadmissible.

"Rule 404(b) literally conditions admissibility of other-crimes evidence on the State's compliance with the notice provisions of Rule 404(b)." *Hernandez v. State,* 176 S.W.3d 821, 824 (Tex. Crim. App. 2005). Rule 404(b) provides:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction.

TEX. R. EVID. 404(b).

The purpose of Rule 404(b)'s notice requirement is to prevent surprise to the defendant and apprise him of the evidence the State plans to introduce at trial. *See Hernandez,* 176 S.W.3d at 823-24; *Hayden v. State,* 66 S.W.3d 269, 272 (Tex. Crim. App. 2001). The rule requires "reasonable" notice. *Hayden,* 66 S.W.3d at 272.

On January 18, 2013, Matthews filed his "Request for Notice of Intent to Offer Extraneous Conduct Under Rule 404(b) and Evidence of Conviction of an Extraneous Crime or Bad Act Under Article 37.07." In response, the State filed its "Notice of Intent to Introduce Evidence of Extraneous Matters" on September 9, 2013, which stated in relevant part:

> 3. On or about August 19, 2012, the defendant began drinking beer at 7:30am and continued until 7:45pm at his home in Johnson County, Texas. This was witnessed by ... Andy Smith ....
>
> ....
>
> 10. On or about August 19, 2012, the defendant stated to Andy Smith "in my house I have the ability to shot [sic] someone and get away with it". This occurred in Johnson County, Texas, and within hours of the defendant killing Kidd.
>
> ....
>
> 17. On or about March 1, 2007 to August 19, 2012, the defendant would almost daily threaten to kill ... Andy Smith in Johnson County, Texas.
>
> ....
>
> 29. On or about February 1, 2009, to August 19, 2012, the defendant stated to Andy Smith "In my house, I have the ability to shoot someone and get away with it". This occurred in Johnson County, Texas.

On October 2, 2013, the State then filed its "1st Amended Notice of Intent to Introduce Evidence of Extraneous Matters" and its "2nd Amended Notice of Intent to

Introduce Evidence of Extraneous Matters."[1] In the second amended notice, the State

repeated the list of relevant "evidence of extraneous matters" above and added:

> 37. From on or about August 1, 2010 to August 19, 2012, in Johnson County, Texas, the defendant told Andy Smith, on multiple occasions, that his house is the safest because of his weapons.
>
> 38. On or about August 1, 2012, in Johnson County, Texas, the defendant placed a carved wooden item on top of a partially cut down tree in his yard and told Andy Smith ... that this item watched over the neighborhood.
>
> 39. From on or about February 1, 2009 to August 19, 2012, in Johnson County, Texas, the defendant told Andy Smith, on multiple occasions, that if someone attacked him with a deadly weapon, he had the ability to kill that person with his bare hands and then claim the killing was in self-defense.
>
> ....
>
> 41. From on or about February 9, 2009 to August 19, 2012, in Johnson County, Texas, the defendant told Andy Smith, on multiple occasions, that he was an expert in martial arts and could kill a person with his bare hands.
>
> 42. From on or about February 9, 2009 to August 19, 2012, in Johnson County, Texas, the defendant told Andy Smith, on multiple occasions, that he has altered his firearms to make them more powerful.
>
> 43. That on or about July 1, 2012, in Johnson County, Texas, the defendant told Andy Smith that his [sic] has killed people in the past.

First, the State's second amended notice of intent to introduce evidence of

extraneous matters did include notice of Smith's testimony that, during their

conversation on August 19, 2012, Matthews said that he had lots of guns and

ammunition—enough to take care of any situation that might arise. The State's second

---

[1] Matthews did not argue in the trial court, nor does he argue in this Court, about the reasonableness of the timing of the State's October 2, 2013 first and second amended notices of intent to introduce evidence of extraneous offenses.

amended notice specifically states: "37. From on or about August 1, 2010 to August 19, 2012, in Johnson County, Texas, the defendant told Andy Smith, on multiple occasions, that his house is the safest because of his weapons."

Second, Matthews did not complain in the trial court that he was not provided notice of Smith's testimony on redirect examination that he had said Matthews always seemed fascinated with altercations where he could kill someone and get away with it. Matthews cannot therefore complain about it on appeal. *See* TEX. R. APP. P. 33.1(a); *Banda v. State*, 890 S.W.2d 42, 62 (Tex. Crim. App. 1994) (stating that trial objection must comport with issue raised on appeal to preserve issue for review).

Finally, to constitute an extraneous offense, the evidence must show a crime or bad act and that the defendant was connected to it. *Lockhart v. State*, 847 S.W.2d 568, 573 (Tex. Crim. App. 1992). Smith's testimony that Matthews mentioned that he was a three-time Purple Heart winner during Vietnam, that he was a European martial arts champion, and that he hung out with Chuck Norris or somebody like that who came to visit him in a tournament does not, on its face, show a crime or bad act. Rule 404(b)'s notice requirement therefore does not apply to this evidence. *See* TEX. R. EVID. 404(b).

*Rule 403*

We next turn to Matthews's argument that the trial court erred in admitting testimony of other wrongs or acts because the probative value of the testimony was outweighed by its prejudicial effect. To the extent Matthews is making a Rule 403 complaint about Smith's testimony on redirect examination, his complaint is not preserved because he did not make the complaint as to Smith's testimony on redirect

examination in the trial court. *See* TEX. R. APP. P. 33.1(a); *Lopez v. State*, 200 S.W.3d 246, 251 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd).

Under Rule 403, otherwise relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403.

> [A] trial court, when undertaking a Rule 403 analysis, must balance (1) the inherent probative force of the proffered evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. Of course, these factors may well blend together in practice.

*Newton v. State*, 301 S.W.3d 315, 319 (Tex. App.—Waco 2009, pet. ref'd) (quoting *Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006) (footnote omitted)). We review the trial court's determination under Rule 403 for an abuse of discretion. *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999).

Matthews's defense was that he shot Bradley Kidd in self-defense. Matthews's intent was therefore a prominent issue in dispute at trial. The State had a need for Smith's testimony regarding what Matthews said just hours before the killing because it was probative on the issue of Matthews's intent to commit the charged offense, especially because Smith claims that Matthews said he could kill someone, claim self-defense, and get away with it. Furthermore, although the State acknowledges that

some time was spent on developing this evidence, the testimony was limited to one witness, and we do not believe that it could cause jury confusion or distraction or cause the jury to give it undue weight.

Rule 403 "envisions exclusion of [relevant] evidence only when there is a 'clear disparity between the degree of prejudice of the offered evidence and its probative value.'" *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) (quoting *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001)). We cannot say that there is a "clear disparity" between the danger of unfair prejudice posed by Smith's testimony and its probative value. Thus, the trial court did not abuse its discretion by overruling Matthews's Rule 403 objection to Smith's testimony.

*Hearsay*

Finally, we address Matthews's contention that the trial court erred in admitting testimony of other wrongs or acts because the testimony constituted hearsay. Similarly to his Rule 403 complaint, to the extent Matthews is making a hearsay complaint about Smith's testimony other than his testimony on redirect examination, his complaint is not preserved because he did not make the complaint as to any other portion of Smith's testimony in the trial court. *See* TEX. R. APP. P. 33.1(a); *Thornton v. State*, 994 S.W.2d 845, 853 (Tex. App.—Fort Worth 1999, pet. ref'd).

Hearsay is not admissible except as provided by statute, by the evidentiary rules, or by other rules prescribed under statutory authority. TEX. R. EVID. 802. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d). A

statement is not hearsay, however, if "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement," and the statement is "consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." TEX. R. EVID. 801(e)(1)(B).

During cross-examination of Smith, Matthews established that Smith did not include in his written statement to police after the shooting everything that he was testifying to at trial. For instance, Smith admitted that he did not include in his written statement that Matthews had a wooden character in his front yard that was going to protect the neighborhood. Smith also acknowledged that he did not include in his written statement that Matthews had indicated that he had received three Purple Hearts in Vietnam, was a friend of Chuck Norris's, was a martial-arts expert, and could kill someone with his hands. Smith testified that he did not write down that Matthews said that his house was the safest because of all the weapons he had inside, that Matthews told him that he could kill someone and claim self-defense if the person had something in his hands, or that Matthews said that he had the ability to alter weapons to make them more powerful. The following exchange then occurred:

> Q. [By Defense Counsel] But you testified here in court today that's what he told you?
>
> A. Yes.
>
> Q. Is that right?
>
> A. Yes, sir.

Q.     And you think those are important statements in the context of this murder investigation; is that correct?

A.     It's what - - it's what happened so I do think it's important.

Q.     Okay. But you didn't think it was important enough at the time, although you say you knew about it, to write it down to the police out there when Mr. Kidd was deceased and Gary Matthews was under arrest for murder. You didn't think that was relevant, didn't think it was important?

A.     I think it is important.

Q.     But you didn't tell the police about it at that time. You didn't write it down in your statement?

A.     I did not write it down. I gave a verbal.

Q.     They weren't rushing you, were they? I mean, they weren't rushing you. You had plenty of time. You could have said, "Hey, guys, I've got information - - "

A.     I've never done this before, so I felt rushed.

Q.     You - -

A.     Can I - -

Q.     You felt rushed. It was 9:00. You had plenty of time, didn't you? Didn't you?

A.     I guess. I mean, I don't know how much time - - I didn't know how long they would be there. I didn't know. I know what I was doing and what I was concerned about.

Q.     Okay.

Based on the foregoing testimony, we conclude that Matthews impliedly charged Smith with recent fabrication or improper influence or motive. It was not therefore hearsay for the State to ask Smith during redirect examination if, in his second

statement to police, he said such things as that, in conversations with Matthews, Matthews always seemed fascinated with altercations where he could kill someone and get away with it. *See* TEX. R. EVID. 801(e)(1)(B). We overrule Matthews's first issue.

## Issue No. 2

In his second issue, Matthews contends that the trial court erred in commenting to the jurors on the evidence in the trial, thus denying his right to due process of law. Matthews complains about the trial court's following statement, made at the end of the second day of testimony:

> Ladies and gentlemen, the State has rested, which means they've completed their Case in Chief, about 25 minutes faster than I thought they would so they did a good job. And what the next thing - - there's some things that the Court has to do with the attorneys between now and when I can ask the Defense what their next move is going to be, so I will excuse you for today, and in the morning, we'll be ready to go at 9:00. But I'll tell you that the case is on the schedule that I thought it would be and we're in good shape. So if you'll accompany the bailiff out of the courtroom.

"Ordinarily, a complaint regarding an improper judicial comment must be preserved at trial." *Unkart v. State*, 400 S.W.3d 94, 99 (Tex. Crim. App. 2013). The "traditional and preferred procedure" for seeking relief at trial for a complaint that must be preserved is "(1) to object when it is possible, (2) to request an instruction to disregard if the prejudicial event has occurred, and (3) to move for a mistrial if a party thinks an instruction to disregard was not sufficient." *Id.* at 98-99 (quoting *Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004)). A party may skip the first two steps and request a mistrial, but he will be entitled to one only if a timely objection would not

have prevented, and an instruction to disregard would not have cured, the harm flowing from the error. *Id.* at 99.

Here, Matthews did not object to the trial court's remarks, request an instruction to disregard, or move for a mistrial. His complaint was first made in his motion for new trial. Matthews's complaint that the trial court's above-quoted statement was an improper comment to the jurors on the evidence in the trial was therefore not preserved. *See id.; Bryant v. State*, 455 S.W.2d 235, 236 (Tex. Crim. App. 1970).

The Court of Criminal Appeals, however, has granted relief on an improper-judicial-comment complaint that was not preserved at trial. *See Blue v. State*, 41 S.W.3d 129 (Tex. Crim. App. 2000) (plurality op.). In *Blue*, the trial judge had apologized to the jurors about the delay in the case, telling them that the defendant was still deciding whether to accept the State's plea offer or go to trial. *Id.* at 130. The trial judge further told the jurors, "I prefer the defendant to plead," and "[W]e were all trying to work toward that and save you time and cost of time." *Id.* A plurality of the Court decided that the trial judge's remarks vitiated the defendant's presumption of innocence and were fundamental error of constitutional dimension that required no objection. *Id.* at 131-32.

The circumstances in this case differ from the circumstances in *Blue*. Here, the trial court's comments focused not on the weight of any evidence presented, any arguments made, or any positions taken; rather, the comments merely conveyed the trial court's hope to keep the trial on schedule based on the State's concluding its case in

chief sooner than expected. *See also Unkart*, 400 S.W.3d at 99-102. We therefore overrule Matthews's second issue.

Having overruled both of Matthews's issues, we affirm the trial court's judgment.

REX D. DAVIS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
     (Chief Justice Gray concurs with a note)*
Affirmed
Opinion delivered and filed December 11, 2014
Do not publish
[CRPM]

*(Chief Justice Gray concurs in the Court's judgment. A separate opinion will not issue.)



CERTIFIED MAIL

7000 3354 5193

Gary Evan Matthews
TDCJ- CID # 01883270
William P. Clements, Sr. Unit
9601 Spur 591
Amarillo, Texas 79107





Court of Criminal Appeals
of Texas
P.O. Box 12308, Capitol Station
Austin, Texas 78711-2308

LEGAL MAIL