**Opinion issued August 22, 2024**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-23-00343-CR

———————————

**STEPHON NATHANIEL MARTIN, JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 506th District Court**
**Waller County, Texas**
**Trial Court Case No. 20-10-17468**

## MEMORANDUM OPINION

A jury found Appellant Stephon Nathaniel Martin, Jr. guilty of the offense of

aggravated sexual assault and assessed his punishment at seven years' incarceration.

On appeal, Martin argues (1) the trial court erred by denying his motion for directed

verdict in which he argued there was insufficient evidence that he used or exhibited

a deadly weapon during the commission of the offense, and (2) the trial court erred by making an improper comment during voir dire that deprived him of a fair punishment trial. We affirm the trial court's judgment.

## Background

Appellant Stephon Nathaniel Martin, Jr. was charged by indictment with the first degree felony offense of aggravated sexual assault.[1] The indictment alleged that "on or about the 15th day of August 2020 . . . [Martin] did then and there intentionally and knowingly cause the penetration of the sexual organ of Kendallyn Harris" without her consent "and in the course of the same criminal episode [Martin] used or exhibited a deadly weapon, namely a firearm."

### A. Voir Dire

During voir dire, the panel was instructed that, if Martin were found guilty of aggravated sexual assault, the applicable punishment range would be five to ninety-nine years' incarceration, and if the imposed sentence was less than ten years, the jury could recommend that Martin be placed on probation for any term of not more than ten years.[2] The defense, the State, and the trial court questioned the panel

---

[1] *See* TEX. PENAL CODE § 22.021.

[2] *See* TEX. PENAL CODE § 12.32(a) (stating first degree felony punishable by imprisonment for life or any term not more than ninety-nine years or less than five years); TEX. CODE CRIM. PROC. art. 42A.053(a)(1), (d)(1) (authorizing trial court to suspend imposition of sentence for felony offense and place defendant on community supervision for period no less than minimum term of imprisonment applicable to offense); *see generally Euler v. State*, 218 S.W.3d 88, 89 n.1 (Tex.

2

extensively to determine whether they would be able to consider the full range of punishment should Martin be found guilty of the charged offense:

Court: Okay, in order to qualify you for this jury, you must know what the possible punishment range is for this offense. You will be asked if you can consider the entire range of punishment for this type of offense. You will not be asked to commit to any particular punishment, either high or low in this case until you have heard all the evidence. We simply need to know if you will be able to keep an open mind as to the entire range of punishment until you have heard all the facts. Are you all okay with that? And they are going to go over the punishment range with you. If I'm not mistaken, I believe it is five to 99, is that what we are looking at?

State: Yes.

Court: Five years to 99 years. Okay? If any sentence that may be imposed is less than 10 years, the jury may recommend the Defendant be placed on probation for any term of not more than 10 years, along with the fine. So, those are the punishment ranges you will be asked to consider in this case.

. . . .

There are obviously some cases that present those kind of facts that require punishment in the upper range, but there are also those kind of cases that do not present those kinds of facts, and are worthy of lesser punishment.

. . . If there is something in your mind that tells you it is simply not possible to accept the law in this case, and the possible punishment range provided by the law, the attorneys will need to know that during you[r] questioning, and they will get to

Crim. App. 2007) ("[W]e will refer to 'community supervision' by its common name, 'probation.'"); *Hongpathoum v. State*, 578 S.W.3d 213, 214 n.1 (Tex. App.— Fort Worth 2019, no pet.) (stating terms "community supervision" and "probation" are "synonymous and generally used interchangeably").

3

you on that. Okay? We had one lady that we let go. Her religion just said flat out she could not judge anyone. And so, because of that, there was no use in keeping her around. Okay? All right.

Therefore to take any of these discussions about punishment into consideration as a presumption of guilt in the trial of case [sic]. The Defendant is presumed to be innocent until proven guilty, beyond a reasonable doubt.

. . . .

You may believe that a person who has been convicted of sexually abusing another person should be in jail. I agree with that principle, but you and I do not know if that man here today is guilty of that offense. He has not been convicted, only accused. We have not heard any evidence yet.

. . . .

State:   As far as the trial, there is the guilt/innocence portion, and then that's where we decide the elements and whether it's proven beyond a reasonable doubt. And then we go to the punishment phase, and that is a separate phase to decide the appropriate sentence.

So, some people may feel that the law ought to be stronger on certain things. That doesn't mean you are automatically disqualified. It is whether you can consider everything. So, right now without having heard anything, can you be open minded to all options regarding punishment? So, if you can consider, hypothetically speaking, you know, you could consider five to 99 as punishment, right? So, you don't know what the facts are, I can't tell you the facts. But can anyone say that in no situation can I potentially consider the entire range of punishment? There is an element there that I'm just not going to consider it at all. Anyone? And probation as well. Is there anyone who says for this crime there is not a situation that I can even consider or think of that probation would be appropriate? You will listen to the evidence, right? Will anyone consider that? All right.

4

Defense: So, once you hear the facts, and you decide and you feel whatever punishment you feel is right based on the evidence, right? Use all the tools in your tool kit.

. . . .

Defense: On a scale of one to seven, with one being strongly agreed, and seven being strongly disagree, how would you answer the following question: If the facts justified it, and the law allowed it, I could not consider assessing the minimum punishment and recommended probation. After you hear this case and remember, this case is not going to be something simple, it's not going to be easy. It does involve some mature matters and graphic details. It's going to happen. And we all know that if you have something that you would like to tell the Court and tell myself in private you are free to do that, too. But this is something that is very critical to my client. Very, very critical to Mr. Martin. So, if you see that question in this case, based on what you know, but after you hear the facts, you have heard aggravated sexual assault. Could you ever consider probation, Juror Number 1? If you find him guilty?

Several jurors responded that they could not recommend probation for anyone found guilty of aggravated sexual assault:

Juror 29: Just to clarify, the question is, could we consider probation?

Defense: Yes. For this type of charge for this type of case.

Court: Remember, you don't know what the facts are at that point.

Defense: But sometimes people say if I found that person guilty I could never give probation. And that's what I'm trying to find out. It's okay to say—just I want—it is an important day for myself and Mr. Martin, and what is your opinion about that?

5

Juror 29:    My opinion is that I cannot.

Defense:     You cannot. So, where would you be on that numerical scale? You could be a Number 1? And your number, again, number 29?

Juror 29:    1.

. . . .

Court:       Okay . . . we are at the hour mark. I do have a question after everybody answered that question. I want to make sure y'all understand, or make sure that after I heard a lot of 1s and 2s. If I give you, as this Court, an instruction that you are to consider probation upon a guilty of aggravated sexual assault, can you do that? Y'all haven't heard any facts. You don't know what the facts are. Y'all might say, "oh, I heard that, I can make that decision." So, I guess my question is: I need to make sure that you're not saying, "Oh, if he is guilty of sexual assault, I'm not doing probation." Because that's not what the law is. That's not going to be what the instructions is. Can you follow the law if I give you that instruction? If anybody can't follow that instruction on the law, I need you to raise your hand. That's what we are talking about. Okay. All right.

. . . .

If you can't follow the law, I can't put you on the jury. . . Because I have to have fair jurors over there to follow the law and the instructions that I give on the law. . . . If you are saying, "Man, if this gentleman is guilty of aggravated sexual assault without not knowing any of the facts, then I'm going to not give him probation," and that's not what the law says he is possibly entitled to, and you are not following the law. That's what I need to know. All right?

. . . .

Court:       . . . So, what I'm asking is if you can consider everything before making the decision, and if you can do that. I'm not

6

saying that you have to give someone probation. Just like I'm not saying you have to give someone 99 years. But can you consider the whole spectrum, because the law says that you can. Do we understand?

. . . .

If the law says that he is entitled to probation, or you can give him 99 years, y'all can consider all of the whole range. That's all I'm saying. I'm not saying that you are required to give the man probation.

Defense: But you did state it earlier correctly, which is if they did find him guilty of aggravated sexual assault, with a firearm, could they give him probation.

Court: Our law says that even if you are found guilty of sexual assault with a firearm, that the range of punishment can be from probation to 99 years. Okay? No one is saying that you have to give the person probation. But no one is saying that you have to give them 99 years. And I don't know what the facts are in this case, okay? But let's say there are facts here that say, "You know what, he is a good kid or go[od] boy or a good man or whatever, and because of this, this, and this, yeah, he is a candidate for probation." Or the same thing on the other side. "Man, he is the most evil person you ever met in your life. He deserves 99 years." I'm just asking that you consider all of that after you hear the facts of the case. . . . So, that's what I'm asking. I'm not asking you to give someone probation. I'm asking that you consider. And so, does that change anybody's mind?

Defense: So, the question is: In the appropriate case, could the jury consider giving someone probation after they were found guilty of aggravated sexual assault of a firearm?

Court: Can you follow my instructions and follow the law, is the question. And in these type [of] cases probation is something that the law allows you to consider. Is there anybody that cannot do that? If you can't do that, that's

7

fine, just raise your hand. Okay. So, that cuts it back down. All right. Hold them high. Okay. I'll call your number out.

After the State and the defense exercised their peremptory strikes, Martin raised a *Batson v. Kentucky*[3] challenge to the State's striking of three venire members, which the trial court overruled.[4] Martin then objected to one of the trial court's statements during voir dire:

Defense: That was a comment made by the Court at the end of my voir dire as to whether or not they could—you said if—I think that it tainted the jury that you made a comment on the case, and I think the jury is tainted about due process.[5]

Court: If I recall when I made the statement, I followed up with the statement that I said that, you know, if that was what the evidence had proved, but I also came back and said that you have to consider all the evidence. That was the point I was actually making. You can't just take into consideration that you know the allegations itself. So, that was my point. I think that's what I said. Is that not true?

State: I agree with you. I believe that the other statement that you made was that but we have to follow the law. The law in the State of Texas that somebody is charged with can carry from probation to 99 years, and so it is perfectly permissible for you to say this is what people feel like.

Defense: The caveat is that the people think differently.

Court: Well, I mean, if you are saying, [defense counsel], I think I bent over backwards and made it harder for the State

---

[3]     *See Batson v. Kentucky*, 476 U.S. 79, 89 (1986) (holding Fourteenth Amendment's Equal Protection Clause forbids State from exercising peremptory strikes based solely on potential juror's race).

[4]     Martin does not appeal from that ruling.

[5]     Martin is not raising a due process challenge on appeal.

when you are saying there were several sentences where he is a good guy. I tried to level the playing field. And there are reasons why a person could get probation, even Jesus Christ, that to me, if anything doesn't get much fairer than that. You need to consider the law. Just because you don't like the way a person is accused doesn't mean that— we need to know. If you can put that aside and follow the law. That was my whole line of questioning. I don't think I stepped over the line. It is well noted on the record and if it needs to go up, then you have your record made.

Defense: All right.

Court: So, I will overrule that.

The jury was impaneled, and trial began the next day.

## B.    Trial Testimony

Kendallyn Harris, the complainant, testified that she was walking to the convenience store with her cousins Keiara Williams and Azaria Stevenson when Martin stopped his car and offered them a ride. The women agreed and got into Martin's car. Harris sat in the front passenger seat, and Williams and Stevenson sat in the back seat. Williams sat behind the passenger seat and Stevenson sat in the middle. After taking them to A&M Mart and a liquor store, Martin drove Williams and Stevenson back to their house. Martin asked Harris to ride back with him to the store and Harris agreed.

Instead of taking Harris to the store, Martin drove her to an apartment complex and parked his car in the parking lot. Martin was in the driver's seat and Harris sat in the front passenger seat. According to Harris, Martin "tried to pull [her] closer to

9

him." They "were up in the middle of the front seat where" the center console was located. Harris told Martin she did not want to have sex with him, and she tried to keep him from pulling her shirt and shorts down. Martin, however, pulled Harris' shorts down, inserted his penis into her vagina, and ejaculated onto her stomach. Harris testified:

> I didn't fight back more because he was under the influence. And, well, when I seen that he had a gun, I didn't want to do anything further just because he was not in his normal mind. So, I didn't want his mind to think that he had to use that, because I was trying to escape or anything like, as far as his madness. So, that's why I didn't fight back or just proceed to get out of the car.

According to Harris, Martin's gun was "sitting on the floor, on the little step in the middle of the floor under the radio" in the front seat. She testified it was near the center console where it remained the entire time. Harris did not know when the gun was placed on the mound near the center console but she "noticed it when [they] were on the way to the apartments." Harris also testified:

> During the time of the act, I noticed [the gun] during after the fact that he was doing what he was doing, and that's when I kept looking to make sure, like, in my mind hopefully he does not use it. So, that's when I was thinking like put up a good fight, get out of this car, and that's whenever I noticed that the gun—I don't know how to put it to you. I don't know.

When asked if she would have done anything differently if the gun had not been by the center console, Harris testified:

> I probably would have gotten out of the car. I probably would have [] used my taser, because I had a taser with me. But I did not use it

10

because, again, he had a more powerful weapon than me. So, I didn't want to start bringing it out because he has a gun.

Harris testified that Martin drove her home after he assaulted her.

Harris was shown a photograph of the interior of Martin's car and asked to circle with her finger where the gun was located. After, in connection where Harris circled the photograph, the court stated, "Let the record reflect that what I call the hump in between the passenger seat and the driver's seat, below the console." On cross-examination, Harris testified that Martin never pulled out the gun, threatened her with the gun, or pointed the gun at her.

Williams also testified at trial. She testified that when Martin dropped her and Stevenson off at their home, Martin claimed he had left something at the store, and he asked Harris to drive back with him to the store to retrieve it. Williams did not think it was a good idea for Harris to drive back to the store with Martin:

State: Were you concerned at all—I guess, was there anything interacting with him and being in his vehicle that made you concerned about her going with him?

Williams: Well, the weapon that he had, but, I mean, in today's world, everyone carries a weapon. So, I can't say, Oh, hey, don't carry. You know, I can't say, why does he have it in his car, because I know a lot of people carry weapons.

State: What weapon was it.

Williams: It was an actual gun.

State: And where was it?

11

Williams:     It was sitting—I don't know if it fell out of his pocket when we went to the store or with whatever, but it was like —he picked it out of the—it fell on the little thing between the seat. I think it is called a console.

State:        When did he do that?

Williams:     Like it was—I don't remember if it was in the turn, but it was probably ready to go.

State:        He took it out while you were in the vehicle?

Williams:     He didn't take it out. It must have fell out and he just laid it on there.

State:        I see. And just for clarification, what did it fall out of?

Williams:     I'm guessing out of something he had on. His clothing or whatever.

State:        Okay. So, you didn't see it until it fell out?

Williams:     Yes, ma'am.

Williams was shown a photograph of the interior of Martin's car and asked to circle with her finger where the gun was located "after it fell out." After she pointed to the photograph, the court stated, "Let the record reflect on State's Exhibit 23, the witness has circled the console area." Williams testified that the gun remained in the console while she was in the car.

Williams testified that she knew something had happened when Martin dropped Harris off at her house because Harris was upset and disheveled. After Harris told her family what had happened between her and Martin, one of Harris's family members called 911. Williams testified that she spoke to one of the officers

12

who responded to the call, and she gave the officers Martin's name, his physical description, and a description of his car. Martin was detained by police later that day.

When Texas Ranger Chris Rainwater searched Martin's car, he found a 9 millimeter Torus pistol in "the pouch of the rear portion of the front passenger seat," and two 12-round magazines in the center console. One magazine had ammunition in it and the other did not.[6] Photographs of the gun Ranger Rainwater found in Martin's car were admitted into evidence and Harris identified the gun in the photographs as the gun she saw in Martin's car when he assaulted her.

After the State rested its case, Martin moved for a directed verdict arguing the State had failed to prove that he had used or exhibited a deadly weapon during the course of the sexual assault. After hearing arguments from Martin and the State, the trial court denied Martin's motion.[7]

The jury found Martin guilty of aggravated sexual assault and it made an affirmative finding that Martin used or exhibited a deadly weapon during the sexual assault.

---

[6] There is no testimony regarding whether the pistol was loaded during the sexual assault, and Martin does not argue on appeal that the evidence is insufficient to support the deadly weapon finding because the pistol was unloaded.

[7] After the trial court denied Martin's motion for directed verdict, Martin made his opening statement and then called one witness, Davion Jackson. Jackson's testimony is not relevant to our analysis concerning the sufficiency of the evidence supporting the jury's deadly weapon finding.

13

## C.    Punishment Hearing

Martin elected to have the jury assess his punishment.  During the punishment hearing, Harris testified that because of the assault, she is less trusting of others and more careful about who she interacts with:

State:    Can you tell the jury, do you have any strong feelings about what punishment should be in this case?

Harris:    Oh, I would like for him to get more—State:    Yes. So, in a case like this, he could potentially get probation or prison time. Do you have strong feelings about what the jury does?

Harris:    No, I don't.

The jury also heard from Jayla Weaver, who testified that Martin attempted to assault her sexually two weeks after he assaulted Harris.  The court also admitted testimony and evidence that Martin had pleaded guilty to committing a Class A misdemeanor offense of assault-family member and had been sentenced to five days in the county jail.  Martin committed that offense on October 31, 2020, two months after he sexually assaulted Harris.  Two years earlier, in December 2018, Martin also pleaded guilty to the Class B misdemeanor offense of possession of marijuana and was placed on six months deferred adjudication community supervision.

The jury also heard from Martin's grandmother, mother, former teacher, and a friend who testified that Martin is a good father to his two young daughters and he was his six-year-old daughter's primary caregiver.  They also testified that Martin

14

was employed and lived with and cared for his mother, who had an inoperable brain tumor.

During closing arguments, Martin's defense counsel argued that the jury should recommend probation because Martin's terminally ill mother and young daughter were dependent upon him, he had successfully completed deferred adjudication community supervision for his drug offense, and Harris did not have a strong opinion as to whether Martin should be sentenced to prison or placed on probation. Martin's defense counsel asked the jury for mercy and stated that Martin would "gladly do all ten years of probation, gladly."

The State argued that probation was not appropriate because Martin had attempted to assault Weaver only two weeks after sexually assaulting Harris, and although Martin had successfully completed deferred adjudication community supervision for his drug offense, Martin had not learned from the experience because he had not faced any consequences for his actions. The State asked the jury to assess Martin's punishment as incarceration, not probation.

The jury assessed Martin's punishment at seven years' incarceration but did not recommend probation. This appeal followed.

**Deadly Weapon Finding**

In his first issue, Martin argues there is insufficient evidence to establish he used or exhibited a deadly weapon when he sexually assaulted Harris because he

15

never brandished the gun or pointed it at Harris, he did not mention the gun before, during, or after the sexual assault, and he did not threaten Harris with harm during the sexual assault.[8]  The State argues that the evidence is sufficient to support the jury's affirmative deadly-weapon finding because the gun was visible to Harris and within Martin's reach during the sexual assault, and Harris testified that but for the presence of Martin's gun near the car's center console, she would have fought back, used her taser, and tried to get out of the car.

## A.    Standard of Review

An appellant's challenge to the trial court's denial of a motion for directed verdict is a challenge to the sufficiency of the evidence.  *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996). We review a challenge to the sufficiency of the evidence under the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307 (1979).  *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (holding sufficiency challenges are reviewed under standard set forth in *Jackson v. Virginia*). We examine the evidence in the light most favorable to the jury's verdict to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319; *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012).  We review all introduced evidence,

---

[8]    Martin does not challenge the sufficiency of the evidence supporting the jury's finding that he sexually assaulted Harris.

16

whether properly or improperly admitted. *See Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *see also Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006) ("[A] reviewing court is permitted to consider all evidence in the trial-court record, whether admissible or inadmissible, when making a legal-sufficiency determination.").

"The jury is the sole judge of the credibility and weight to be attached to the testimony of witnesses." *Merritt*, 368 S.W.3d at 525 (citing *Jackson*, 443 U.S. at 319). As the sole factfinder, the jury may reasonably infer facts from the evidence presented, credit the witnesses it chooses, disbelieve any or all of the evidence or testimony proffered, and weigh the evidence as it sees fit. *See Canfield v. State*, 429 S.W.3d 54, 65 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). We afford almost complete deference to the jury's determinations of credibility. *See id.* (citing *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008)). In the event of conflicting evidence, we presume the jury resolved conflicts in favor of the verdict and defer to that determination. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010); *Canfield*, 429 S.W.3d at 65. "Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient." *See Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016).

## B.    Deadly Weapon

A deadly weapon is a "firearm, or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury" or "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE § 1.07(a)(17).  To sustain a deadly weapon finding, the evidence must demonstrate that (1) the object meets the statutory definition of a deadly weapon, (2) the deadly weapon was used or exhibited during the transaction from which the felony conviction was obtained, and (3) other people were put in actual danger. *Mayes v. State*, 536 S.W.3d 102, 109 (Tex. App.—Amarillo 2017, pet. ref'd) (citing *Brister v. State*, 449 S.W.3d 490, 494 (Tex. Crim. App. 2014)); *Brister*, 449 S.W.3d at 494 (stating "actual danger" refers to risk of "death or serious bodily injury").

Mere possession of a deadly weapon during the commission of a felony offense is not sufficient to establish a deadly weapon finding. *See Plummer v. State*, 410 S.W.3d 855, 864–65 (Tex. Crim. App. 2013). Rather, the evidence must establish some "facilitation connection" between the weapon and the felony offense. *Id.* at 865.

To determine whether a weapon was "used" to facilitate a felony, the evidence must establish that the weapon furthered the commission of the offense or enabled, continued, or enhanced the offense. *Robinson v. State*, 174 S.W.3d 320, 332 (Tex.

18

App.—Houston [1st Dist.] 2005, pet. ref'd). The term "use of a deadly weapon" not "only includes the wielding of a firearm, but also extends 'to *any* employment of a deadly weapon, even its simple possession, if such possession facilitates the associated felony.'" *Id.* (quoting *Patterson v. State*, 769 S.W.2d 938, 940–41 (Tex. Crim. App. 1989) (emphasis in original). A deadly weapon is "exhibited" if it was "consciously shown or displayed during the commission of the offense." *Plummer*, 410 S.W.3d at 858 (citing *Patterson*, 769 S.W.2d at 941). While a person "can 'use' a deadly weapon without exhibiting it, [] it is doubtful [that a person] can exhibit a deadly weapon during the commission of a felony without using it." *Id.* Proximity is a factor courts consider to determine whether a deadly weapon was "used or exhibited" during the commission of a felony. *Id.*

## C.    Analysis

Martin argues there is insufficient evidence to support the jury's finding that he "used or exhibited" a deadly weapon when he sexually assaulted Harris because he never brandished the gun or pointed it at Harris, he did not mention the gun before, during, or after the sexual assault, and he did not threaten Harris during the sexual assault. According to Martin, the evidence merely showed that "the gun inadvertently fell from [Martin] and was set on [the] ground in the front seat and was never moved or referenced by [Martin]." He further argues that the "presence of the firearm in the front seat did not place Harris in actual danger."

19

The State argues the evidence is sufficient to support the jury's finding that Martin "used or exhibited" the gun when he sexually assaulted Harris because the gun was visible to both Martin and Harris, the gun was within Martin's reach when he sexually assaulted Harris, and Harris testified she would have fought back or fled had she not seen Martin's gun.

We agree with the State that the evidence is legally sufficient to support the jury's deadly weapon finding. We find the opinion in *McCain v. State*, 22 S.W.3d 497 (Tex. Crim. App. 2000) instructive to our analysis. In *McCain*, the defendant burst into the complainant's house, struck her several times with his fist, and stole her car and pager. *Id.* at 499. The complainant testified that during the assault, she saw an object that appeared to be a knife sticking out of the defendant's back pocket, and the defendant had a butcher knife in his pocket when he was arrested. *Id.* The Court of Criminal Appeals held that the defendant, who did not verbally threaten the complainant, brandish the knife, or refer to the knife during the assault, had nevertheless "used or exhibited" the knife when he assaulted the complainant. *Id.* at 503. The court stated:

> Had the knife been completely concealed by appellant's clothing, additional facts would have been needed to establish that the butcher knife was used. But the knife was partially exposed, and from that exposure, the factfinder could rationally conclude that the knife was exhibited during the criminal transaction, or at least, that its presence was used by appellant to instill in the complainant apprehension, reducing the likelihood of resistance during the encounter.

20

> We are not equating mere possession with "use or exhibit" under Texas Penal Code § 29.03(a)(2). Rather, the determining factor is that the deadly weapon was "used" in facilitating the underlying crime.

*McCain*, 22 S.W.3d at 503; *see also see also Patterson*, 769 S.W.2d at 939 (holding deadly weapon was used where officers executing warrant for drug possession entered home and found defendant sitting on a sofa, a gun located between defendant's leg and end of sofa, and a gun boot on an end table next to defendant); *Castillo v. State*, 426 S.W.3d 135, 139 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (holding evidence was sufficient to support jury's deadly weapon finding where loaded semi-automatic rifle and shotgun were found in plain view leaning against wall near drugs in room where defendant was sleeping).

Like the court in *McCain*, we hold the jury rationally could have concluded that the gun, which was in plain view in the center console of Martin's car when he sexually assaulted Harris, was exhibited during the criminal transaction, or at least, that its presence was used by Martin to instill in the complainant apprehension, reducing the likelihood of resistance during the encounter. Williams testified that she saw the gun in Martin's car before he dropped her and Stevenson at their home. According to Williams, the gun fell out of some article of Martin's clothing while Martin was driving, and Martin "picked [the gun] up and laid it" on the center console.

21

Harris testified that she saw the gun in Martin's car when he drove her to the apartment parking lot where he assaulted her. Although during cross-examination she testified that Martin never pulled out the gun, threatened her with the gun, or pointed the gun at her, she testified that the gun was "sitting on the floor, on the little step in the middle of the floor under the radio" and near the center console. Martin was sitting in the driver's seat and Harris was sitting in the front passenger seat. According to Harris, Martin "tried to pull [her] closer to him," causing them to be "up in the middle of the front seat where" the center console was located. Although Harris struggled with Martin when he tried to pull her shorts down, she decided not to fight back anymore, use her taser, or try to get out of the car because Martin's gun, which was on the floor near the center console, was clearly visible and within Martin's reach during the sexual assault and Harris was afraid he would use the gun if she resisted or attempted to run.

Based on Harris's testimony that the gun was in plain sight, that the gun was within Martin's reach during the sexual assault, and that she decided to stop struggling and to not use her taser or try to run because she saw the gun during the assault and she was afraid Martin would use it if she resisted, the jury rationally could have concluded that Martin used the presence of the gun in the car "to instill in [Harris] apprehension, reducing the likelihood of resistance during the encounter," and thus that he used or exhibited the gun during the commission of the sexual

22

assault. *McCain*, 22 S.W.3d at 503; *see also Plummer*, 410 S.W.3d at 865 (holding weapon facilitates commission of felony if weapon "increase[s] the risk of harm," "otherwise contribute[s] to the result," or plays role in "enabling, continuing, or enhancing" associated felony); *Robinson*, 174 S.W.3d at 332 (stating use of deadly weapon includes "any employment of a deadly weapon, even its simple possession, if such possession facilitates the associated felony").

Given the visibility of the gun, which is a deadly weapon *per se*,[9] and its proximity to Martin during the sexual assault, the jury also could have rationally concluded that Martin's use or exhibit of the gun to facilitate the sexual assault posed an actual danger to Harris. *See Canfield*, 429 S.W.3d at 65 (stating jury determines weight of evidence and may reasonably infer facts from evidence presented); *see also Jenkins*, 493 S.W.3d at 599 (holding circumstantial evidence alone can be sufficient to establish guilt).

We overrule Martin's first issue.

## Comment During Voir Dire

Martin argues the trial judge violated Article 38.05 of the Texas Code of Criminal Procedure by conveying to the venire panel his opinion regarding Martin's punishment. According to Martin, during voir dire, the trial judge conveyed to the

---

[9] TEX. PENAL CODE § 1.07(a)(17)(A) (stating definition of deadly weapon includes "a firearm").

23

venire panel his belief that someone convicted of sexual assault should be punished with confinement rather than probation when the trial judge stated: "You may believe that a person who has been convicted of sexually abusing another person should be in jail. I agree with that principle, but you and I do not know if that man here today is guilty of that offense." The State responds that the trial court's comments during voir dire were not improper and did not reflect judicial bias. And even if the trial court's comments were improper, the State argues they were harmless.[10]

## A. Applicable Law

Trial judges must refrain from making any remark calculated to convey to the jury their opinion of the case because jurors "are prone to seize with alacrity upon any conduct or language of the trial judge which they may interpret as shedding light upon his view of the weight of the evidence, or the merits of the issues involved." *Brown v. State*, 122 S.W.3d 794, 798 (Tex. Crim. App. 2003) (quoting *Lagrone v. State*, 84 Tex. Crim. 609, 615, 209 S.W. 411, 415 (1919)).

Article 38.05 of the Texas Code of Criminal Procedure states:

In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any

---

[10] Martin is not raising a due process challenge or arguing that the trial judge commented upon the weight of the evidence. TEX. CODE CRIM. PROC. art. 38.05. His argument is that he was denied a fair and impartial punishment proceeding because the trial court's statement tainted the jury.

> stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case.

TEX. CODE CRIM. PROC. art. 38.05. By creating "a duty on the trial court . . . to refrain sua sponte from a certain kind of action," Article 38.05 provides the defendant with a right to be tried in a proceeding devoid of improper judicial commentary. *See Proenza v. State*, 541 S.W.3d 786, 798, 801 (Tex. Crim. App. 2017).

## B.    Error

At the beginning of voir dire, the trial judge instructed the jury that the applicable punishment range in the case was five to ninety-nine years' incarceration and if the sentence imposed was less than ten years, the jury could recommend that Martin be placed on probation for any term of not more than ten years. The trial judge told the venire panel that they were not qualified to serve on the jury if they could not consider the entire range of punishment, including probation. The judge informed the venire panel that they would not be asked to commit to a specific punishment. Rather, the court and the parties "simply need[ed] to know if [they] would] be able to keep an open mind as to the entire range of punishment until [they] heard all the facts." The judge acknowledged that while the facts in one case may "require punishment in the upper range . . . there are also those kind of cases that do not present those kinds of facts, and are worthy of lesser punishment." The court stated:

25

> If you think about it you can probably imagine in your own mind cases of circumstances that will either allow for leniency or allow for a more severe punishment . . . .

The trial judge then made the comment to the venire panel that Martin complains about on appeal:

> You may believe that a person who has been convicted of sexually abusing another person should be in jail. I agree with that principle, but you and I do not know if that man here today is guilty of that offense. He has not been convicted, only accused. We have not heard any evidence yet.[11]

---

[11] Martin acknowledges that he did not make a contemporaneous objection to the trial judge's challenged comment. He nonetheless argues that even if he did not object at the time the trial court made the complained-of comment, he may raise the issue for the first time on appeal because the trial court's error was fundamental. *See Ganther v. State*, 187 S.W.3d 641, 650 (Tex. App.—Houston [14th Dist.] pet. ref'd) ("Absent an objection, a defendant waives error unless the error is fundamental—that is, the error creates egregious harm."); *see also Blue v. State*, 41 S.W.3d 129 (Tex. Crim. App. 2000) (plurality) ("The comments of the trial judge, which tainted appellant's presumption of innocence in front of the venire, were fundamental error of constitutional dimension and required no objection.").

We hold that Martin is entitled to appellate review of his issue under Article 38.05 but we disagree with him that he may raise the issue for the first time on appeal because the judge's comments constituted "fundamental error." The Court of Criminal Appeals' opinion in *Proenza v. State* is instructive on this point. 541 S.W.3d 786 (Tex. Crim. App. 2017) (stating "fundamental error" is not "freestanding doctrine of error-preservation"). In *Proenza*, the court rejected the defendant's claim that the trial judge had committed fundamental error by questioning a witness during his trial and thus the defendant was able to challenge the trial court's questioning of the witness for the first time on appeal. As the court explained:

> Although Proenza did not contemporaneously object to the trial judge's improper questioning of a witness, he was nevertheless entitled to appellate review of his claim that, in so doing, the judge violated Texas Code of Criminal Procedure Article 38.05. This is not because the trial judge's comments rose to the level of "fundamental error," but rather because claims

During voir dire, the defense asked the venire panel if, on a scale of one to seven, they agreed with the statement, "If the facts justified it, and the law allowed it, I could not consider assessing the minimum punishment and recommended probation." After hearing the panel members' answers, the trial judge told the venire panel:

> I do have a question after everybody answered that question. I want to make sure y'all understand, or make sure that after I heard a lot of 1s and 2s. If I give you, as this Court, an instruction that you are to consider probation upon a guilty of aggravated sexual assault, can you do that? Y'all haven't heard any facts. You don't know what the facts are. Y'all might say, "oh, I heard that, I can make that decision." So, I guess my question is: I need to make sure that you're not saying, "Oh, if he is guilty of sexual assault, I'm not doing probation." Because that's not what the law is. That's not going to be what the instructions [are]. Can you follow the law if I give you that instruction? If anybody can't follow that instruction on the law, I need you to raise your hand. That's what we are talking about. Okay. All right.
>
> . . . .
>
> If you can't follow the law, I can't put you on the jury. . . . Because I have to have fair jurors over there to follow the law and the instructions that I give on the law. . . . Hypothetically, I don't know anything about this case. . . . But you have got to listen to the facts. Right? You can't just jump to that conclusion, which is kind of what the question is doing. He wants to get your gut reaction on these things. . . . If you are saying, "Man, if this gentleman is guilty of aggravated sexual assault without not knowing any of the facts, then I'm going to not give him probation,"

brought under Article 38.05 are not, in [*Marin v. State's*] framework, subject to forfeiture by inaction.

*Id.* at 802. *Cf. Marin v. State*, 851 S.W.2d 275, 278–80 (Tex. Crim. App. 1993), *overruled on other grounds, Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997). Following *Proenza*, we consider Martin's challenge to the trial court's comments under Article 38.05.

27

and that's not what the law says he is possibly entitled to, and you are not following the law.

. . . .

. . . I'm saying that there might be extenuating circumstances in the case that maybe you think, "Well, knowing that, maybe I will give him probation." All right? Like prior criminal history or it might be that the answer is no. He could have been a choir boy, he could be Jesus Christ, but if he did that, then no, he is gone. Does that make sense? So, what I'm asking is if you can consider everything before making the decision, and if you can do that. I'm not saying that you have to give someone probation. Just like I'm not saying you have to give someone 99 years. But can you consider the whole spectrum, because the law says that you can. Do we understand?

. . . And I don't know what the facts are in this case, okay? But let's say there are facts here that say, "You know what, he is a good kid or go[od] boy or a good man or whatever, and because of this, this, and this, yeah, he is a candidate for probation." Or the same thing on the other side. "Man, he is the most evil person you ever met in your life. He deserves 99 years." I'm just asking that you consider all of that after you hear the facts of the case. But some people come in so blindly and it's rare, but some people come in blindly that, "No, if it's this way." Like the young lady that I excused earlier. Her religion says, "No, I cannot judge anyone at all." That was her religion. So I excused her. So, that's what I'm asking. I'm not asking you to give someone probation. I'm asking that you consider. And so, does that change anybody's mind?

. . . .

Can you follow my instructions and follow the law, is the question. And in these type cases probation is something that the law allows you to consider. Is there anybody that cannot do that?

Although the trial judge told the venire members that while they may "believe that a person who has been convicted of sexually abusing another person should be in jail" and that "he agreed with that principle," he did not convey his opinion as to

28

whether Martin, if convicted, should be incarcerated, and the judge reminded the jury that they had not yet heard any evidence and that he and the parties needed to confirm they would be able to follow the law and consider the whole range of punishment. *See* TEX. CODE CRIM. PROC. art. 38.05 (prohibiting judges from "mak[ing] any remark calculated to convey to the jury his opinion of the case"). Moreover, the trial judge's comment was not made in isolation. Rather, as noted, the judge's comment was part of an extended discussion regarding the prospective jurors' ability to consider the entire range of punishment, including probation. *See Proenza*, 541 S.W.3d at 800 (indicating that when deciding challenge to improper judicial comments under Article 38.05, courts should consider comments "in the context of a particular trial").

During voir dire, the trial judge repeatedly reminded the venire panel that each case should be considered on its evidence, and that while some circumstances might warrant imposing the maximum sentence of 99 years' incarceration, probation might be more appropriate under other circumstances. The trial judge also reminded the panel that they had not yet heard any evidence yet, and they were only being asked whether they could consider recommending probation for Martin, and that he could not have someone on the jury that could not consider the whole range of punishment, including the possibility of probation:

> So, I guess my question is: I need to make sure that you're not saying, "Oh, if he is guilty of sexual assault, I'm not doing probation." Because

29

that's not what the law is. That's not going to be what the instructions [are]. Can you follow the law if I give you that instruction? If anybody can't follow that instruction on the law, I need you to raise your hand. That's what we are talking about. Okay. All right.

. . . .

If you can't follow the law, I can't put you on the jury.

Based on the record before us, we conclude that the trial judge's statement to the venire panel about which Martin complains did not violate Article 38.05 because the comment was not calculated to convey to the panel the judge's opinion of the case against Martin. *See* TEX. CODE CRIM. PROC. art. 38.05 (prohibiting judges from "mak[ing] any remark calculated to convey to the jury his opinion of the case").

We overrule Martin's second issue.

## Conclusion

We affirm the trial court's judgment.

Veronica Rivas-Molloy
Justice

Panel consists of Justices Kelly, Countiss, and Rivas-Molloy.

Do Not Publish. TEX. R. APP. P. 47.2(b).

30